Filed 10/25/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RAUL ALBERTO LOPEZ,<br><br>    Defendant and Respondent. | 2d Crim. No. B256146<br>(Super. Ct. No. F209990001)<br>(San Luis Obispo County) |
| THE PEOPLE<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FREDDIE CHACON,<br><br>    Defendant and Respondent. | 2d Crim. No. B263639<br>(Super. Ct. No. F000210166)<br>San Luis Obispo County |

A criminal defendant should not be punished for exercising a constitutional right as declared by the United States Supreme Court. Here, the defendants exercised their declared rights by obtaining habeas corpus relief. They should not be precluded from obtaining further relief pursuant to a subsequently enacted remedial statute which addresses vindication of the same constitutional right. Were we to do so, we would elevate form over substance. (Civil Code § 3528.)

The People appeal from postjudgment orders granting probation to respondents Raul Alberto Lopez and Freddie Chacon after

the trial court recalled their sentences pursuant to newly amended Penal Code section 1170, subdivision (d).[1]  In 1994, respondents were sentenced to life without possibility of parole (LWOP) plus nine years state prison for crimes they committed as juveniles.  They served almost a quarter of a century in prison.  The People contend that the trial court was without jurisdiction to recall the sentences after the LWOP sentences were modified to simple life sentences in 2012 pursuant to *Graham v. Florida* (2010) 560 U.S. 48, 82.  The People seek refuge under the plain meaning rule.  We understand the People's point but we cannot, in good conscience, subscribe to the "'dictionary school of jurisprudence.'"  (See, e.g., *People v. Clayburg* (2012) 211 Cal.App.4th 86, 91.)  Application of the plain meaning rule would be unfair and penalize respondents because they exercised their constitutional rights as declared by the United States Supreme Court.  We affirm.

*Procedural History*

In 1993, respondents, who were 16 years old, were confined in a California Youth Authority facility (CYA).  They kidnapped a CYA librarian, Ava Goldman, in an attempt to escape from the facility in Paso Robles.  Respondents took Goldman hostage and assaulted her.  Roy Victorino, a CYA instructor, tried to rescue Goldman and was stabbed in the stomach and wrist with a shank.  Respondents were apprehended before leaving the facility.

Respondents were charged with aggravated kidnapping and related offenses.  After waiver of jury, the trial court found them guilty of *inter alia*, kidnapping for ransom with special findings that they inflicted bodily harm, exposed the victim to a substantial likelihood of death, and personally used a dangerous or deadly weapon.  (§§ 209, subd. (a); 12022.7; 12022, subd. (b).)  It sentenced respondents to LWOP

---

[1] All further statutory references are to the Penal Code.

2

for aggravated kidnapping (§ 209, subd. (a)) plus a consecutive nine years in state prison.  Respondents appealed.

In 1995, we vacated the convictions for attempted kidnapping and false imprisonment.  We stayed the sentence on the escape, assault with deadly weapon, extortion, and false imprisonment of a hostage counts (§ 654), and reduced the nine-year determinate sentence to five years.  We also provided that a five-year determinate sentence was to be served before the LWOP sentence.  (*People v. Chacon* (1995) 37 Cal.App.4th 52, 58.)

*Habeas Petitions - Modification of LWOP Sentence*

In 2011 and 2012, respondents filed habeas petitions on the theory that the Eighth Amendment barred the imposition of LWOP sentences on juvenile offenders convicted of nonhomicide offenses.  (*Graham v. Florida*, *supra*, 560 U.S. at p. 82 (*Graham*).)  The district attorney agreed the LWOP sentences should be modified but argued that respondents were presumptively ineligible for probation because a deadly weapon was used.  The trial court reduced the LWOP sentences to life with possibility of parole.  It denied probation.

Respondents appealed, contending that the trial court abused its discretion in not granting probation.  In an unpublished opinion (B238877/B241416), we affirmed on the theory that the trial court could not split the sentence by granting probation on the kidnapping count and imposing a determinate sentence on the other counts.  In footnote 5 of the opinion we noted that newly enacted section 1170, subdivision (d)(2) afforded respondents the right to file a petition to recall the sentences.

*Petitions to Recall Sentence*

In December 2013, Lopez filed a petition to recall his sentence.  (§ 1170, subd. (d)(2).)  The district attorney argued that "the ship has sailed on re-sentencing" because the LWOP sentence had already been reduced to a life sentence.  Overruling the objection, the trial court recalled the entire sentence, sentenced Lopez to life plus five

years, suspended execution of sentence, and granted five years probation. The trial court warned "if you violate probation, you're going back to prison for life with possibility of parole. There's no local time. [¶] So I am imposing the original sentence but suspending [execution] of it for five years of normal probation conditioned on your being [on] good behavior. You are to obey all laws."

Chacon petitioned to recall his sentence on September 18, 2014. The district attorney opposed the petition on the theory that section 1170, subdivision (d)(2) only applies to LWOP sentences. Overruling the objection, the trial court recalled the sentence, suspended imposition of sentence, and granted five years probation. Chacon was released to Immigration and Customs Enforcement for deportation to Mexico to live with his family. The trial court warned "if you come back illegally, that would put you in violation and you know what's going to happen to you if you violate probation. [¶] You go right back to prison for perhaps the rest of your life."

*Statutory Authority to Recall Sentence*

The People contend that the trial court was without jurisdiction to recall the sentences because section 1170, subdivision (d)(2) only provides for the recall of extant LWOP sentences. Because this is a matter of statutory interpretation, our review is de novo. (*People v. Jones* (2001) 25 Cal.4th 98, 103.) "Statutory construction begins with the plain, commonsense meaning of the words in the statute, '"because it is generally the most reliable indicator of legislative intent and purpose."' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 885.) A statute is not to be read in isolation, but construed in context and '"with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.]' [Citation.]" (*Landrum v. Superior Court* (1981) 30 Cal.3d 1, 14.)

Section 1170, subdivision (d)(2), enacted in 2012, provides a "recall" procedure for juvenile LWOP sentences. It was enacted in response to *Graham* which held that the imposition of a LWOP

4

sentence on a juvenile offender convicted of a nonhomicide offense violates the Eighth Amendment. (Assem. Comm. on Public Safety Analysis of Sen. Bill No. 9 (2011-2012 Reg. Sess.) as amended May 27, 2011.) Section 1170, subdivision (d)(2)(A)(i) provides: "When a defendant who was under 18 years of age at the commission of the offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may submit to the sentencing court a petition for recall and resentencing." (Italics added.)

Here all the resentencing criteria were met, literally: Respondents were under the age of 18 when they committed the kidnap; they were sentenced to life without possibility of parole; and they served at least 15 years of the sentence before petitioning for resentencing. (§ 1170, subd. (d)(2)(A)(i).) This section uses the phrase "was sentenced" and refers to the past. Thus, the literal and "plain meaning" of the statute was satisfied. Respondents were sentenced to LWOP terms. Nevertheless, the section appears to contemplate that an LWOP term be in effect but the section does not expressly so indicate. The People should not be hoist on their own "plain meaning" petard. We doubt that the Legislature contemplated the situation where petitioners obtained interim *Graham* relief before remedial legislation was enacted. The section does not expressly speak to the presenting situation. It is for the judiciary to "fill in the blank" and we commend the trial court for doing so.

The People argue that section 1170, subdivision (d)(2) does not apply to a life sentence. As we have explained, modification of the LWOP sentences because of the *Graham* opinion should not render them ineligible for resentencing. If that were the rule, every juvenile offender who exercised his/her Eighth Amendment right to modify a LWOP sentence would be precluded from filing a section 1170, subdivision (d)(2) petition for resentencing. In the words of the trial court: "[I]t would be fundamentally unfair to deny [respondents] the

5

benefit of the change in California law because [they] had already been benefited by the decision made by the U.S. Supreme Court in the <u>Graham</u> decision. Both [*Graham* and 1170, subdivision (d)(2)] were based on the same rationale that juveniles grow up; they change; they mature, and they should not be denied the opportunity at some point to demonstrate that they can be productive citizens of society." We agree with the trial court's articulated rationale and its common sense appraisal of the case. In an appropriate case, the letter of the law should gracefully and charitably succumb to the spirit of justice. (See *People v. Davis* (1967) 55 Misc.2d 656, 659 [286 N.Y.S.2d 396, 400].)

The fallacy of the People's position is demonstrated by the following hypothetical: If the trial court had denied relief in 2012, respondents would have still been serving LWOP sentences. In that event, there would be no impediment to the orders now under review. Respondents did not make an election to seek *Graham* relief as opposed to the subsequently enacted statutory petition to recall the LWOP terms. They are not at fault at any stage of the post-conviction appellate process.

In the last appeal we noted that respondents could theoretically benefit by reason of the newly enacted section 1170, subdivision (d)(2). The People did not seek review and cite no authority that respondents forfeited their statutory right to petition to recall the sentences. "[W]hile an individual certainly may be penalized for violating the law he just as certainly may not be punished for exercising a protected statutory or constitutional right." (*United States v. Goodwin* (1982) 457 U.S. 368, 372.)

Section 1170, subdivision (d)(2), does not expressly exclude a defendant whose LWOP sentence was modified pursuant to *Graham* before January 1, 2013, i.e., the effective date of Section 1170, subdivision (d)(2). If the Legislature, in enacting section 1170, subdivision (d)(2), intended to exclude defendants whose LWOP

sentence were modified to cure an Eighth Amendment/*Graham* sentencing error, it could have so provided.

*Disposition*

The judgments (orders recalling life plus five year state prison sentences and granting probation) are affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Dan Dow, District Attorney, Gregory J. Devitt, Deputy District Attorney, for Plaintiff and Appellant.

Mark R. Feeser, under appointment for Defendant and Respondent, Raul Lopez.

Sidley Austin, Jennifer N. Gaspar, Douglas A. Axel, Christopher S. Munsey, Matt Light, and Jaime A. Bartlett, for Defendant and Respondent, Freddie Chacon.