Filed 2/10/25(depublication denied 7/23/25; reposted with Supreme Court order and statement)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E084222 |
| v. | (Super.Ct.No. RIF083719) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| MARIANO VALDEZ, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. John D. Molloy, Judge. Petition granted.

Michael A. Hestrin, District Attorney and W. Matthew Murray, Deputy District Attorney for Petitioner.

No appearance for Respondent.

1

Steven L. Harmon, Public Defender, William A. Meronek and Nicholas A. Kross, Deputy Public Defenders for Real Party in Interest.

Real party in interest Mariano Albert Valdez was originally sentenced to a term of life without the possibility of parole (LWOP) for a murder he committed at age 17. In 2018, Valdez petitioned for resentencing under Penal Code section 1170, subdivision (d)(1) (§ 1170(d)(1)), which provides that a juvenile offender who "was sentenced to imprisonment for life without the possibility of parole" and has been incarcerated for at least 15 years "may submit to the sentencing court a petition for recall and resentencing." (Pen. Code, § 1170, subd. (d)(1)(A) (§ 1170(d)(1)(A); undesignated statutory references are to this code.) The trial court granted the petition and resentenced Valdez to 50 years to life.

In 2022, *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*) held that it would violate equal protection to deny resentencing relief under section 1170(d)(1) to juvenile offenders who were originally sentenced to the functional equivalent of LWOP. (*Heard*, at pp. 633-634.)

In 2024, Valdez again petitioned for resentencing under section 1170(d)(1), arguing that he is entitled to resentencing under *Heard* because his sentence of 50 years to life is the functional equivalent of LWOP. The court construed the filing as a petition under subdivision (d)(10) of section 1170 (§ 1170(d)(10)), which allows a juvenile offender who previously petitioned for resentencing under section 1170(d)(1) to petition for resentencing after 20 years of imprisonment "[i]f the sentence is not recalled or the

2

defendant is resentenced to imprisonment for life without the possibility of parole." The trial court granted the petition for resentencing under section 1170(d)(10), reasoning that Valdez had been resentenced to the functional equivalent of LWOP and that under *Heard* it would violate equal protection to exclude juvenile offenders so sentenced from the resentencing relief available under section 1170(d)(10).

The People petition for a writ of mandate to compel the trial court to deny Valdez resentencing relief under section 1170(d)(10). We grant the petition.

We publish this opinion in order to clarify that *Heard*'s reasoning does not apply to a request for resentencing under section 1170(d)(10) if the defendant was eligible for youth offender parole under the sentence imposed at resentencing under section 1170(d)(1). Valdez was eligible for youth offender parole under the 50-year-to-life sentence that he received at his resentencing under section 1170(d)(1). Consequently, when that 50-year-to-life sentence was imposed, it was not the functional equivalent of LWOP. Because Valdez was not resentenced to LWOP or its functional equivalent, he is not entitled to relief under section 1170(d)(10).

## BACKGROUND

I. *The conviction and sentence*

Valdez was born in April 1981. In 2000, a jury convicted him of first degree murder (§ 187, subd. (a)) for a killing committed when he was 17 years old. (*People v. Valdez* (Feb. 26, 2002, E028843) [nonpub. opn.].) The jury found true a hate-crime special circumstance (§ 190.2, subd. (a)(16)) and a firearm enhancement (§ 12022.53,

3

subd. (d)), and the court found true a gang enhancement (§ 186.22, subd. (b)(1)). The trial court sentenced Valdez to 25 years to life plus LWOP. Valdez appealed, and we affirmed the judgment in an unpublished opinion. (*People v. Valdez*, E028843.)

II.    *Resentencing under section 1170(d)(1)*

In 2018, Valdez petitioned for resentencing under former section 1170, subdivision (d)(2), which was subsequently redesignated as section 1170(d)(1). (Senate Bill No. 567 (2021-2022 Reg. Sess.); Stats. 2021, ch. 731, § 1.3.) The trial court granted the petition and resentenced Valdez to 50 years to life in state prison.

III.    *Resentencing under section 1170(d)(10)*

In November 2022, Valdez became eligible under section 3051 for youth offender parole at age 41. Valdez received a youth offender parole hearing in December 2023. He was denied parole for five years. His next parole suitability hearing was tentatively set for 2028.

In October 2023, Valdez, representing himself, filed a petition for resentencing under section 1170(d)(1) and *Heard*. *Heard* held that it violates equal protection to deny resentencing relief under section 1170(d)(1) to juvenile offenders who were originally sentenced to the functional equivalent of LWOP. (*Heard*, *supra*, 83 Cal.App.5th at pp. 633-634.) The trial court initially denied the petition in an ex parte proceeding but later struck the denial. Defense counsel was subsequently assigned to represent Valdez and requested time to investigate and to brief the issues relevant to resentencing Valdez.

4

The People then filed written opposition to the petition, arguing that Valdez was not entitled to be resentenced again under section 1170(d)(1).

Valdez filed a supplemental petition for resentencing under section 1170(d)(1). He argued that he was entitled to resentencing under section 1170(d)(1) under the reasoning of *Heard* because his sentence of 50 years to life is the functional equivalent of LWOP. The People filed a supplemental opposition to the petition, arguing that *Heard* is distinguishable and that Valdez's sentence of 50 years to life is not the functional equivalent of LWOP.

The trial court found the petition to be a successive petition filed under section 1170(d)(10) and granted it. The court cited *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*) for the proposition that "[a] sentence of 50 years to life is the functional equivalent of a life without parole sentence ('de facto life without parole')." Because Valdez had been resentenced to 50 years to life, the court found Valdez's sentence to be the functional equivalent of LWOP under *Contreras*. The trial court further found the analysis in *Heard* applicable to resentencing petitions under section 1170(d)(10). Relying on *Heard*, the trial court concluded that it would violate "equal protection to deny an individual sentenced to the functional equivalent of life without parole the opportunity to petition for resentencing under subdivision (d)(10) of section 1170."

The trial court granted a three-week stay to allow the People to file a petition for writ of mandate to seek review of the court's ruling, which the People did. We stayed proceedings in the trial court pending our decision on the writ petition.

DISCUSSION

The People contend that the trial court erred by granting Valdez's resentencing petition because (1) *Heard* was wrongly decided, and (2) Valdez's sentence is not the functional equivalent of LWOP. The People do not challenge the trial court's decision to construe Valdez's petition as a petition under section 1170(d)(10). We accordingly assume for the sake of argument that the trial court did not err in that regard, and we treat the operative filing as a petition under section 1170(d)(10).

We need not decide whether we agree with the equal protection analysis in *Heard* as it applies to section 1170(d)(1) or whether that analysis applies to resentencing petitions under section 1170(d)(10) for defendants who, at resentencing pursuant to section 1170(d)(1), are sentenced to the functional equivalent of LWOP. Assuming that *Heard* was correctly decided and that its analysis applies to resentencing petitions under section 1170(d)(10) brought by defendants who were resentenced to the functional equivalent of LWOP pursuant to section 1170(d)(1), we agree with the People that the 50-year-to-life sentence that Valdez received on resentencing in 2018 is not the functional equivalent of LWOP for purposes of resentencing under section 1170(d)(10).

I.      *Juvenile sentencing law*

Over the last two decades, both the United States Supreme Court and the California Supreme Court have recognized that the Eighth Amendment's prohibition of cruel and unusual punishment limits "the punishment that may constitutionally be imposed on juvenile offenders." (*Heard*, *supra*, 83 Cal.App.5th at p. 615.) In 2010,

6

*Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) held that the Eighth Amendment categorically "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." (*Graham*, at p. 82; *id.* at p. 74; see also *Roper v. Simmons* (2005) 543 U.S. 551, 568, 572, 578 [Eighth Amendment categorically exempts imposition of the death penalty on offenders who were under age 18 when the crime was committed].) *Graham* explained that a juvenile offender convicted of a nonhomicide crime need not be guaranteed eventual release, but if a sentence of life is imposed on such a juvenile offender, then that offender must be provided "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham*, at p. 75; *id.* at p. 82.)

*Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*) extended *Graham*'s reasoning (but not its categorical ban) to juvenile offenders who commit homicide. (*Miller*, at pp. 476-477, 480, 489.) *Miller* held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments'" (*id.* at p. 465) and that a judge or jury sentencing a juvenile offender for a homicide crime must have the opportunity to consider certain specified mitigating circumstances related to the offender's youth before imposing LWOP (*id.* at pp. 477-479, 489).

In 2012, the California Supreme Court in *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*) held that "a 110-year-to-life sentence imposed on a juvenile convicted of nonhomicide offenses contravenes *Graham*'s mandate against cruel and unusual

7

punishment under the Eighth Amendment." (*Id.* at p. 265.) Because the juvenile defendant was not eligible for parole for 100 years, the court reasoned that the indeterminate sentence "with a parole eligibility date that falls outside the juvenile offender's natural life expectancy" amounted to the "functional equivalent" of a sentence to LWOP, which the Eighth Amendment prohibits for juvenile offenders convicted of nonhomicide crimes. (*Caballero*, at p. 268.)

In order to bring juvenile sentencing into conformity with *Graham*, *Miller*, and *Caballero*, our Legislature added sections 3051, 3046, subdivision (c), and 4801, subdivision (c), to the Penal Code effective January 1, 2014. (*People v. Franklin* (2016) 63 Cal.4th 261, 276-277 (*Franklin*).) Section 3051 requires the Board of Parole Hearings "to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration" (§ 3051, subd. (b)), depending on the offender's "'controlling offense'" (*id.*, subd. (a)(2)(B)). (*Franklin*, at p. 277.) Although section 3051 originally excluded juvenile offenders sentenced to LWOP from youth offender parole eligibility, the Legislature subsequently amended the statute to provide that such offenders are eligible for youth offender parole hearings in the 25th year of incarceration. (*Heard*, *supra*, 83 Cal.App.5th at p. 619, fn. 8; § 3051, subd. (b)(4).)

In 2016, our Supreme Court held in *Franklin* that the reasoning of *Caballero* applies to juvenile homicide offenders and that the Eighth Amendment prohibits sentencing a juvenile homicide offender to a sentence that is the functional equivalent of LWOP "without the protections outlined in *Miller*." (*Franklin*, *supra*, 63 Cal.4th at

8

p. 276.) The juvenile homicide offender in *Franklin* was sentenced to 50 years to life and argued that the sentence violated the Eighth Amendment because it was the functional equivalent of LWOP. (*Franklin*, at p. 268.) *Franklin* concluded that the defendant's challenge to the constitutionality of his sentence was rendered moot by section 3051, which became effective after the defendant was sentenced. (*Franklin*, at pp. 276-277.) *Franklin* explained that section 3051 "changed the manner in which the juvenile offender's original sentence operates by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole." (*Franklin*, at p. 278.) The court described the defendant's sentence, as transformed by the retroactive application of section 3051, as "a life sentence with parole eligibility during his 25th year of incarceration, when he will be 41 years old." (*Franklin*, at p. 279.) *Franklin* "conclude[d] that such a sentence is not the functional equivalent of LWOP" (*ibid.*), reasoning that the entitlement to a youth offender parole hearing meant that the defendant was "serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration" (*id.* at pp. 279-280).

Two years later, in *Contreras*, our Supreme Court concluded that sentences of 50 years to life and 58 years to life for two 16-year-old defendants who were not convicted of homicide offenses were the functional equivalent of LWOP. (*Contreras*, *supra*, 4 Cal.5th at pp. 356, 368-369.) Both defendants were convicted under the one strike law (§ 667.61), which rendered them ineligible for youth offender parole. (*Contreras*, at pp. 357, 359; § 3051, subd. (h).) Given the defendants' statutory ineligibility for youth

9

offender parole, *Contreras* noted that the analysis of the juvenile defendant's 50-year-to-life sentence in *Franklin* was inapplicable.  (*Contreras*, at p. 359.)  *Contreras* reasoned that the defendants' earliest possible release at age 66 or age 74 "after decades of incarceration" did not afford the defendants the meaningful incentive to rehabilitate and opportunity for redemption and reentry into society required by the Eighth Amendment. (*Contreras*, at pp. 368-369.)

II.      *Resentencing under section 1170, subdivision (d)*

Section 1170(d)(1) provides:  "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."  (§ 1170(d)(1)(A).)  "The petition must include a statement describing the defendant's remorse, identifying any work towards rehabilitation, and stating one of four qualifying circumstances is true."  (*People v. Sorto* (2024) 104 Cal.App.5th 435, 443 (*Sorto*); § 1170, subd. (d)(2).)  If the court recalls the sentence, then "the court shall have the discretion to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence."  (§ 1170, subd. (d)(7).)

"If the sentence is not recalled or the defendant is resentenced to imprisonment for life without the possibility of parole, the defendant may submit another petition for recall and resentencing" after at least 20 years of incarceration, and another after 24 years.

10

(§ 1170(d)(10).) Relief under section 1170(d)(10) is thus available to defendants who previously filed petitions for resentencing under section 1170(d)(1) and either (1) were denied relief under section 1170(d)(1) or (2) were granted relief and resentenced to LWOP. (§ 1170(d)(10).)

"'The proper interpretation of a statute is a question of law we review de novo.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.) We interpret a statute to ascertain the Legislature's intent by first looking to the statute's language, giving the words a commonsense and plain meaning. (*Ibid.*) Whether Valdez's sentence is the functional equivalent of LWOP presents a question of law on undisputed facts, which we independently review. (*People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485, 518.)

By its terms, subdivision (d) of section 1170 limits relief to juvenile defendants who were either originally sentenced to LWOP or resentenced to LWOP upon petitioning for resentencing under section 1170(d)(1). (§ 1170(d)(1)(A) & (10).) However, two courts have recently held that constitutional principles of equal protection require that relief under section 1170(d)(1) be extended to juvenile offenders who were originally sentenced to the functional equivalent of LWOP. (*Heard*, *supra*, 83 Cal.App.5th at pp. 633-634; *Sorto*, *supra*, 104 Cal.App.5th at p. 454; see also *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1054-1063 [reaffirming the holding in *Heard*].) In *Heard* and *Sorto*, the defendants were sentenced to terms of over 100 years to life before section 3051 was enacted; consequently, when the sentences were imposed they did not allow for

11

parole eligibility within the defendants' lifetimes. (*Heard*, at pp. 613-614, 628; *Sorto*, at pp. 440-441, 445.) The subsequent enactment of section 3051 rendered the defendants eligible for youth offender parole after serving 25 years. (*Heard*, at p. 628; *Sorto*, at p. 441.) The People consequently argued in both cases that under *Franklin*'s holding concerning section 3051 and the functional equivalent of LWOP, the defendants were no longer serving de facto LWOP sentences, so it was appropriate to deny them relief under section 1170(d)(1). (*Heard*, at p. 628; *Sorto*, at p. 447.)

Both *Heard* and *Sorto* rejected the argument. (*Heard*, at pp. 628-629; *Sorto*, at pp. 447-448.) *Heard* explained that because section 1170(d)(1)(A) "'uses the phrase "*was sentenced*" and refers to the past,'" the relevant inquiry under the provision is the sentence that was originally imposed, which might not be the same as the sentence currently being served by the defendant. (*Heard*, *supra*, 83 Cal.App.5th at p. 629.) *Heard* reasoned: Although the defendant's "sentence as it currently operates is no longer the functional equivalent of life without parole, this does not change the fact that the sentence was a de facto life without parole sentence at the time it was imposed. Because section 1170, subdivision (d)(1)(A), refers to the 'offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole' (italics added), and [the defendant] was sentenced to the functional equivalent of a life without parole sentence, he is similarly situated with the juvenile offenders whose sentences make them eligible to seek resentencing." (*Ibid.*) *Sorto* rejected the People's argument for the same reason. (*Sorto*, *supra*, 104 Cal.App.5th at p. 448.)

12

In granting Valdez resentencing relief under section 1170(d)(10), the trial court concluded that the equal protection analysis in *Heard* applies to juvenile offenders who were resentenced under section 1170(d)(1) to the functional equivalent of LWOP and then petition to be resentenced again under section 1170(d)(10). We need not decide the issue, and we also need not decide whether *Heard* and *Sorto* were correctly decided. We assume for the sake of argument that *Heard* and *Sorto* were correctly decided and that their analysis applies equally to juvenile offenders who petition for resentencing under section 1170(d)(10) after having been resentenced to the functional equivalent of LWOP pursuant to section 1170(d)(1). Even given all of those assumptions, Valdez is not entitled to relief under section 1170(d)(10), because he was not resentenced to the functional equivalent of LWOP.

*Heard* and *Sorto* concluded that the sentences of the defendants in those cases were the functional equivalent of LWOP despite youth offender parole under section 3051, because section 3051 did not exist when those defendants were sentenced, which is the relevant inquiry under section 1170(d)(1). (*Heard*, *supra*, 83 Cal.App.5th at p. 629; *Sorto*, *supra*, 104 Cal.App.5th at p. 448.) But section 1170(d)(10) does not include the same "was sentenced" language as section 1170(d)(1) and accordingly does not refer to the sentence originally imposed. (Cf. *Heard*, at p. 629.) Rather, section 1170(d)(10) provides for resentencing if the juvenile offender "is resentenced to imprisonment for life without the possibility of parole," so the relevant sentence is the one that was imposed upon resentencing under section 1170(d)(1).

In 2018, Valdez was resentenced to 50 years to life, and his offenses did not exclude him from youth offender parole eligibility. Valdez was resentenced after the enactment of section 3051, so the 50-year-to-life sentence imposed on resentencing included the availability of youth offender parole under section 3051. *Franklin* characterized such a sentence as "a life sentence with parole eligibility during [the defendant's] 25th year of incarceration," which *Franklin* concluded did not constitute the functional equivalent of LWOP. (*Franklin*, *supra*, 63 Cal.4th at p. 279.) We are bound by that precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1960) 57 Cal.2d 450, 455.) Under *Franklin*, Valdez was resentenced to a life sentence with parole eligibility during his 25th year of incarceration, which is not the functional equivalent of LWOP. (*Franklin*, at p. 279.)

*Contreras* does not require a contrary result. Valdez's 50-year-to-life sentence is distinguishable from the 50- and 58-year-to-life sentences imposed on the juvenile defendants in *Contreras*, because both of those defendants were sentenced under the one strike law and consequently were ineligible for youth offender parole. (*Contreras*, *supra*, 4 Cal.5th at pp. 357, 359, 368-369; § 3051, subd. (h).) As a result, the defendants in *Contreras* were not eligible for parole until the ages of 66 and 74. (*Contreras*, at pp. 359, 368.) In contrast, Valdez is eligible for youth offender parole and in fact already received a youth offender parole hearing at age 42. (See *Franklin*, *supra*, 63 Cal.4th at pp. 279-280.)

For all of these reasons, we conclude that Valdez was not resentenced to the functional equivalent of LWOP. Thus, even assuming for the sake of argument that equal protection requires that resentencing under section 1170(d)(10) be available to defendants resentenced under section 1170(d)(1) to the functional equivalent of LWOP, the trial court still erred by granting Valdez's petition for resentencing under section 1170(d)(10).[1]

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the trial court (1) to vacate its order granting Valdez resentencing relief under section 1170(d)(10), and (2) to enter a new and different order denying the petition for resentencing. The stay of proceedings in the trial court shall be dissolved when this opinion becomes final.

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

---

[1] Valdez requests judicial notice of a letter filed by the Attorney General in another appeal in the Second District in which the Attorney General withdrew its argument that *Heard*, *supra*, 83 Cal.App.5th 608, was wrongly decided. The People, represented by the Riverside County District Attorney, oppose the request. We deny the request because the letter is not relevant to our analysis. (*People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6.)

15

Court of Appeal, Fourth Appellate District, Division Two - No. E084222

**S289792**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Petitioner,

v.

SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;

MARIANO VALDEZ, Real Party in Interest.

_____

The request for an order directing depublication of the opinion in the above-entitled appeal is denied.


(See Concurring Statement by Justice Liu)


_____/s/_____
*Chief Justice*

PEOPLE v. SUPERIOR COURT (VALDEZ)

S289792

Concurring Statement by Justice Liu

This case addresses resentencing eligibility under Penal Code section 1170, subdivision (d) (section 1170(d)) in an unusual set of circumstances. (All undesignated statutory references are to the Penal Code.) In 2000, defendant Mariano Albert Valdez was sentenced to a term of life without the possibility of parole (LWOP) for a murder he committed at the age of 17. (*People v. Superior Court* (*Valdez*) (2025) 108 Cal.App.5th 791, 794 (*Valdez*).) In 2018, Valdez petitioned for resentencing under section 1170(d)(1) and was resentenced to 50 years to life. (*Valdez*, at p. 794.) Valdez's resentencing came after the 2014 enactment of youth offender parole under section 3051, such that unlike his original LWOP sentence, his new "50-year-to-life sentence . . . included the availability of youth offender parole." (*Valdez*, at p. 801.) After *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*) held that section 1170(d) resentencing must be made available to youth offenders sentenced to the functional equivalent of LWOP, Valdez sought a second resentencing. (*Valdez*, at p. 794.) He argued that because his new 50 years to life sentence was the functional equivalent of LWOP, *Heard* meant he must be given a second chance at section 1170(d) resentencing. (*Valdez*, at p. 794.)

I express no view on the merits of *Heard* or the merits of *Valdez*'s resolution of its fact pattern. But I am concerned that *Valdez* is being cited as authority for something it does not say.

1

According to a depublication request jointly submitted by the Los Angeles County Public Defender's Office and the Pacific Juvenile Defender Center, *Valdez* is cited as "controlling authority" in opposition to "all" of the initial resentencing petitions under section 1170(d)(1) that the public defender's office is handling for petitioners otherwise eligible for such resentencing under *Heard*. They explain that the Los Angeles County District Attorney is arguing that *Valdez* stands for the proposition that a youth offender *originally* sentenced to the functional equivalent of LWOP is not eligible for resentencing under section 1170(d)(1) because youth offender parole has since become available. The Riverside County District Attorney's opposition to depublication maintains this reading of *Valdez* and argues that any resulting confusion reflects a split of authority over the meaning of functional LWOP.

In fact, *Valdez* says nothing about the meaning of functional LWOP for purposes of the inquiry under section 1170(d)(1). Consistent with the specific facts in *Valdez*, the opinion explains that its holding is limited to the inquiry for *successive* resentencing petitions under section 1170(d)(10). (*Valdez*, *supra*, 108 Cal.App.5th at p. 797 ["[T]he 50-year-to life sentence that Valdez received on resentencing in 2018 is not the functional equivalent of LWOP *for purposes of resentencing under section 1170(d)(10)*" (italics added)].)

The notion that *Valdez* is "controlling authority" for initial petitions is all the more odd given that the opinion's analysis is driven by the distinction it draws between the text of section 1170(d)(10)'s successive petition provision and initial resentencing under section 1170(d)(1). (*Valdez*, *supra*, 108 Cal.App.5th at pp. 800–801.) *Valdez* notes that "*Heard* explained that because section 1170(d)(1)(A) ' "uses the phrase

2

'*was sentenced*' and refers to the past," ' the relevant inquiry under the provision is the sentence that was originally imposed, which might not be the same as the sentence currently being served by the defendant." (*Valdez*, at p. 800.) The court in *Valdez* read *Heard* to say that a sentence of over 100 years to life was "the functional equivalent of LWOP despite youth offender parole under section 3051, because section 3051 did not exist when [the] defendant[] [was] sentenced, which is the relevant inquiry under section 1170(d)(1)." (*Id.* at p. 801; see also *People v. Lopez* (2016) 4 Cal.App.5th 649, 654 [youth offenders whose original LWOP sentences were later modified on habeas to life sentences under *Graham v. Florida* (2010) 560 U.S. 48 were nevertheless entitled to section 1170(d)(1) relief because the "section uses the phrase 'was sentenced' and refers to the past," and defendants "were sentenced to LWOP terms"].) By contrast, *Valdez* observed, "section 1170(d)(10) does not include the same 'was sentenced' language," and therefore concluded that the provision "does not refer to the sentence originally imposed." (*Valdez*, at p. 801.) For successive resentencing eligibility under section 1170(d)(10), "the relevant sentence is the one that was imposed upon [the first] resentencing under section 1170(d)(1)." (*Valdez*, at p. 801.) Because youth offender parole was available when Valdez was resentenced in 2018, he was not entitled to a second resentencing because his new 50 years to life sentence was "not the functional equivalent of LWOP." (*Ibid.*)

*Valdez*'s express rationale makes clear it should not be cited as authority for the meaning of functional LWOP under section 1170(d)(1). The opinion repeatedly states it does not disturb *Heard*'s conclusion that the subsequent creation of youth offender parole does not alter the meaning of functional

LWOP for purposes of section 1170(d)(1). (*Valdez*, *supra*, 108 Cal.App.5th at pp. 797, 801 ["We assume for the sake of argument that *Heard* . . . [was] correctly decided."].) Appropriately, no Court of Appeal has endorsed the contention that *Valdez* is a barrier to resentencing under section 1170(d)(1).


**LIU, J.**