Filed 10/7/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B337826 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA076108) |
| v. | |
| RICHARD JOSEPH GOMEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James D. Otto, Judge. Reversed and remanded with instructions.

Bess Stiffelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Richard Gomez was convicted of murder and attempted murder when he was 17 years old and sentenced to an aggregate term of 75 years to life. After 15 years in custody, appellant filed a petition for recall and resentencing pursuant to Penal Code section 1170, subdivision (d) (1170(d)).[1] Under that statute, the trial court must recall and resentence a petitioner if it finds by a preponderance of the evidence that at least one of four eligibility criteria is satisfied. After reviewing the parties' filings, some of which are not included in the appellate record, and holding a hearing, the trial court found none of the criteria was satisfied and denied the petition.

We conclude that the appellate record, limited though it is, compels a finding that appellant committed the offense with an adult codefendant and accordingly reverse. The matter is remanded to the trial court to conduct a resentencing hearing in accordance with the relevant portions of section 1170(d). We express no opinion on how the court should exercise its sentencing discretion under section 1170(d). [2]

## BACKGROUND

### I.    Charges and Conviction

An amended information filed on October 22, 2009 alleged that appellant (born in 1989) and adult Melanie Gandara (born in 1971) murdered victim Mary Castro (§ 187, subd. (a)) and

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    Appellant also filed a related petition for writ of habeas corpus, No. B346958. By order dated June 25, 2025, we indicated that further consideration and determination of that petition would be deferred until the instant appeal was considered by this court. The petition has now been considered and is denied as moot by a concurrently filed separate order.

2

willfully, deliberately, and with premeditation attempted to murder victim Juan C. on or about April 29, 2007, when appellant was 17 years old. (§§ 187, subd. (a), 664.) The information alleged gang enhancements as to both charges (§ 186.22, subd. (b)(1)(C)), and further alleged personal use firearm enhancements against appellant only. (§ 12022.53, subds. (b)-(d).) The information also alleged that appellant was a minor who was at least 16 years old at the time of the crimes (former Welf. & Inst. Code, § 707), and suffered two prior convictions within the meaning of section 667.5, subdivision (b).

A jury found appellant guilty of first degree murder and willful, premeditated, and deliberate attempted murder. It also found the gang and personal use firearm allegations true. The court sentenced appellant to a term of 25 years to life for the murder, plus a consecutive term of 25 years to life for the related firearm enhancement. It imposed a consecutive sentence of life plus 25 years to life for the attempted murder and related firearm enhancement. On both counts, the court imposed and stayed a 10-year sentence for the gang enhancement. The court dismissed the prior conviction allegations. Appellant's aggregate sentence thus totaled 75 years to life.

Appellant appealed his conviction. A different panel of this court affirmed the judgment. (*People v. Gomez* (July 2, 2012, No. B225128) [nonpub. opn.].)

## II. Section 1170(d) Proceedings

### A. Statute

Section 1170(d)(1)(A) provides that "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole [LWOP]

3

has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."[3]  The petition must include "the defendant's statement that the defendant was under 18 years of age at the time of the crime and was sentenced to life in prison without the possibility of parole" and "the defendant's statement describing their remorse and work toward rehabilitation."  (§ 1170, subd. (d)(2).) It must also include the defendant's statement that one of the following four things is true:

"(A) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.

"(B) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.

"(C) The defendant committed the crime with at least one adult codefendant.

"(D) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse."  (§ 1170, subds. (d)(2)(A)-(D).)

The People may, but are not required to, file a reply to the petition within 60 days of service. (§ 1170, subd. (d)(4).)

"If the court finds by a preponderance of the evidence that one or more of the statements specified in subparagraphs (A) to

---

[3]     Section 1170(d)(1)(B) sets forth eligibility limitations not relevant here.

4

(D), inclusive, of paragraph (2) is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170, subd. (d)(5).)

If the court does not recall the sentence, or resentences the defendant to LWOP, the defendant may submit another petition "when the defendant has been committed to the custody of the department for at least 20 years." (§ 1170, subd. (d)(10).) "If the sentence is not recalled or the defendant is resentenced to [LWOP] under that petition, the defendant may file another petition after having served 24 years. The final petition may be submitted, and the response to that petition shall be determined, during the 25th year of the defendant's sentence." (*Ibid.*)

### B.    Petition

On January 2, 2024, appellant, through counsel, filed a petition for recall and resentencing under section 1170(d). Appellant asserted that he committed the murder and attempted murder on April 29, 2007, and several additional unrelated crimes for which he subsequently was sentenced, when he was 17. He further asserted that his aggregate sentence of 75 years to life, plus an additional 29 year sentence for the other crimes, was a functional or "*de facto* LWOP sentence" and therefore entitled him to seek section 1170, subdivision (d) relief under *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*).

Appellant asserted that he "has demonstrated, by a preponderance of the evidence" three of the four eligibility criteria enumerated in subdivisions (d)(2)(A) through (D). Specifically, he asserted that he "was convicted under a felony

5

murder or aiding and abetting theory of murder" (see § 1170, subd. (d)(2)(A)); "[t]he crime was committed with an adult co-defendant" (see § 1170, subd. (d)(2)(C)); and he "has performed acts that tend to indicate rehabilitation or the potential for rehabilitation" (see § 1170, subd. (d)(2)(D)). Appellant did not invoke the fourth criterion related to juvenile felony adjudications. (§ 1170, subd. (d)(2)(B).)

Appellant attached several exhibits in support of his petition: (1) a May 27, 2010 minute order documenting his sentencing; (2) the appellate court opinion from his direct appeal; (3) a handwritten letter "express[ing his] remorse" and describing his rehabilitative efforts; and (4) three laudatory chronos and six certificates documenting those rehabilitative efforts.[4]

### C.     Opposition

On March 19, 2024, the People filed an opposition to appellant's petition. They conceded that appellant's sentence was the functional equivalent of LWOP, but otherwise challenged his eligibility for relief. The People asserted that appellant's "statement of remorse and certificates of programs he has undertaken . . . are not clear proof of efforts toward rehabilitation as opposed to efforts to apply for resentencing." They added that they were "attempting to get the disciplinary record or 'C' file of

---

[4]     Appellant also attached a March 17, 2021 minute order amending nunc pro tunc an August 4, 2010 minute order to clarify that appellant was sentenced on that date to a total term of 29 years in state prison for three felony carjacking offenses (§ 215, subd. (a)) and related firearm enhancements (§ 12022.53, subd. (b)). Appellant asserted that he committed these crimes on February 1, 2007, February 11, 2007, March 19, 2007, and May 9, 2007, when he was 17 years old.

6

Mr. Gomez to whether [*sic*] he has in fact been participating in rehabilitative efforts."

The People further asserted that "the crime at issue" was not "in fact committed with an adult co-defendant" and "note[d] that the co-defendant is currently fighting the legality of her sentence and disputes the factual basis of that conviction." Despite appellant's lack of reliance on the criterion related to juvenile felony adjudications, the People also argued that appellant had several adjudications that precluded relief, including the carjackings for which he was sentenced to 29 years and an earlier adjudication "for terrorist threats and exhibiting an imitation firearm." The People did not address whether appellant was convicted under the felony murder doctrine or as an aider and abettor.

There is a page labeled "EXHIBIT" attached to the opposition, but the brief does not identify any attached exhibits and none appears to be included in the appellate record.[5]  The People also stated during the hearing that they filed "a supplemental" on April 23, 2024, but no document(s) fitting that description or filed on that date are included in the appellate record.

### D.    Hearing and Ruling

Although section 1170(d) does not require that the trial court hold a hearing before ruling on a petition (see § 1170, subd.

---

[5]    Appellant filed, and we granted, a motion to augment the appellate record with the amended information and the probation report.  The motion states only that these documents "are part of then [*sic*] normal record on appeal, [and] were not included in the appellate record for this case"; it does not identify either as the missing exhibit from the People's opposition.

7

(d); *People v. Harring* (2021) 69 Cal.App.5th 483, 498 & fn. 5 (*Harring*)), the trial court heard the matter on April 29, 2024.

"[I]n response to the People's supplemental," which, as noted, is not in the appellate record, appellant's counsel disputed the People's assertion that "there was no adult co-defendant." Counsel argued, "She was charged. She was found guilty for this offense. Even if an 1172.6 was granted, she still has a conviction related to the offense for which Mr. Gomez— [*sic*]" The court interjected that Gandara did "not have a conviction related to the offense," because her "conviction was vacated" under section 1172.6. Counsel responded that Gandara "was a participant," and that "[w]e go back to the original time," when Gandara was charged and convicted. Counsel further asserted that appellant's convictions were obtained under a felony murder theory, because "it was a drug buy gone bad." Additionally, she argued that "[w]e just need to show there is potential for rehabilitation, and in this case we have."

The court made the following findings and rulings: "Okay. As to the first of the four criteria, whether Mr. Gomez was an aider and abettor or under a felony murder, he was not because his co-defendant's conviction was vacated. He was the actual shooter according to the evidence in the case, and he was convicted as the actual shooter. There was no evidence that anybody else was the actual shooter other than Mr. Gomez. [¶] As to number 2, he does have a juvenile record along with a conviction that happened after this case but for an event that occurred before this case. [¶] He did not act with a co-defendant because the co-defendant's allegations were all found under 1172.6 review to have – she did not act as a co-defendant or an aider and abettor, and she was exonerated on that. Her

conviction was vacated. She was re-sentenced only for the drug related crime."

The court then asked the People if they wanted to be heard regarding appellant's alleged rehabilitation. The People argued, "I think it's very clear from the papers here that Mr. Gomez in no way, shape, or form has the potential for rehabilitation. He has several incidents since he's been in prison. Most importantly, he has an assault on a prisoner with great bodily injury in which he was prosecuted by the local district attorney's office near his prison, and he was sentenced to 12 additional years for that offense. Since that time he's had additional batteries on prisoners. [¶] Just frankly, Your Honor, he's been a menace in prison, and it is a farce to even say that he is close to showing that he passed [*sic*] the potential for rehabilitation. Certainly he has not. Based on his prison record, he has not rehabilitated, but he has no potential for rehabilitation in the sense that he's been hurting or harming fellow prisoners . . . almost from day 1 since he's been in prison."

In response, appellant's counsel acknowledged that appellant "did have issues, I guess, maybe initially going into prison," as a "17-year-old going into a prison with adult prisoners, that's not an easy transition to make." She argued that he had since "shown potential for rehabilitation, which is reflected in the attachments to the petition." Counsel emphasized that "we don't need to show 100 percent rehabilitation. We need to show a potential, which we have."

The court found that appellant failed to meet the rehabilitation eligibility criterion. It explained, "I do not believe it's been shown by a preponderance that he has performed those acts sufficiently to show rehabilitation or potential. I suppose

everybody always has potential, and maybe in the future he will have the potential and he will be able to show this, but he certainly has not shown it at this point in time." Because it found that appellant did not meet any of the four eligibility criteria in section 1170, subdivision (d)(2), the court denied the petition. Appellant timely appealed.

## DISCUSSION

Appellant contends that he met his burden on three of the four eligibility criteria.[6] We begin and end our analysis with section 1170(d)(2)(C), which we conclude is satisfied here.

A petitioner must establish the truth of at least one of the eligibility criteria by a preponderance of the evidence. (§ 1170(d)(5); *Harring, supra,* 69 Cal.App.5th at p. 502.) We review the trial court's factual determinations for substantial evidence, and its interpretation and application of the statute to those factual findings de novo. (*Id.* at p. 495.)

The question under section 1170(d)(2)(C) is whether appellant "committed the offense with at least one adult

---

[6] Appellant also makes the necessary threshold argument that he was sentenced to a term that is the functional equivalent of LWOP and therefore may seek section 1170(d) relief. (See *People v. Sorto* (2024) 104 Cal.App.5th 435, 440; *Heard, supra,* 83 Cal.App.5th at pp. 633-634.) The question of where to draw that line is currently pending before the Supreme Court. (See *People v. Munoz* (2025) 110 Cal.App.5th 499, review granted June 25, 2025, S290828 ["Is a juvenile homicide offender sentenced to 50 years to life in prison entitled to recall and resentencing under Penal Code section 1170, subdivision (d)(1) on the ground that the sentence is the functional equivalent of life imprisonment without parole?"].) Respondent concedes that appellant's sentence is the functional equivalent of LWOP for purposes of eligibility for section 1170(d) relief; we accept the concession.

codefendant." (§ 1170(d)(2)(C).) The charging document in the appellate record establishes that appellant was charged jointly with Melanie Gandara, who at age 35 was an adult at the time of the crimes. Gandara therefore was an "adult codefendant"—but did appellant "commit[ ] the offense with" her?

The trial court concluded, and respondent argues here, that the answer to that question is no: "Gandara's convictions were vacated [under section 1172.6] because she did not aid and abet either murder or attempted murder and '[s]he was re-sentenced only for the drug-related crime.'" We presume these factual findings are supported by substantial evidence in the record. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) They are also undisputed.

The dispute here is one of statutory interpretation, which presents a question of law. (*Harring*, *supra*, 69 Cal.App.5th at p. 495.) Respondent takes a narrow view of the language in section 1170(d)(2)(C), asserting that the petitioner and adult codefendant must factually, via their conduct, "commit" the same "offense" for which the petitioner was sentenced to LWOP or its equivalent. Appellant, on the other hand, takes a less restrictive view. He contends the "statute's plain language looks to the commission of the offense, not the nature of any related convictions," and Gandara "remains convicted for her participation in the drug deal and related robbery, which led to the shooting."[7] We conclude appellant has the better interpretation.

---

[7] Both parties rely on the factual recitations in the opinion resolving his direct appeal to support their assertions about the nature of the crime. "Whether and to what extent an opinion is probative in a specific case must be decided on the facts of that case." (*People v. Woodell* (1998) 17 Cal.4th 448, 457.) We need

11

"The fundamental task of statutory interpretation is to determine the Legislature's intent so as to effectuate the law's purpose." (*Harring*, *supra*, 69 Cal.App.5th at p. 495.) We start by looking at the words of the statute itself, affording them their plain and commonsense meaning. (*Ibid.*) "'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.'" (*Id.* at p. 496.) If the language is susceptible to more than one reasonable interpretation, we may consider the statutory purpose, legislative history, public policy, and other interpretative aids. (*Ibid.*) We strive to construe ambiguous provisions reasonably, so as to "''''result in wise policy rather than mischief or absurdity.'''''" (*Ibid.*)

As evidenced by the parties' dueling interpretations, the language "committed the offense with" is susceptible to more than one reasonable interpretation. We accordingly look beyond the plain language to the purpose of the statute. Section 1170(d) generally "was enacted in response to *Graham* [*v. Florida* (2010) 560 U.S. 48,] which held that the imposition of an LWOP sentence on a juvenile offender convicted of a nonhomicide offense violates the Eighth Amendment." (*People v. Lopez* (2016) 4 Cal.App.5th 649, 653 (*Lopez*).) The driving rationale was that "'juveniles grow up; they change; they mature, and they should not be denied the opportunity at some point to demonstrate that they can be productive citizens of society.'" (*Id.* at p. 654.) Regarding the references to adult codefendants, "the Legislature

---

not make that determination here, as we presume the trial court's factual findings that Gandara was but is no longer convicted of at least one homicide offense stemming from the April 2007 incident is supported by substantial evidence.

12

was concerned about juveniles who were sentenced to LWOP for crimes they committed while "'acting under the influence of an adult.'"" (*People v. Willover* (2016) 248 Cal.App.4th 302, 321.)

It would be absurd to limit the scope of this concern to juveniles who were convicted of precisely the same "offense" as the adult codefendant at issue. An adult may influence a juvenile to "commit" an "offense" even if the adult does not engage in identical conduct or share the juvenile's culpability. Moreover, it is not open to dispute on this record that Gandara was at one point convicted of a homicide or attempted homicide offense stemming from the April 2007 incident for which appellant was convicted and sentenced to the functional equivalent of LWOP. That conviction has now been vacated and reduced many years later due to a change in the law, but the fact remains that appellant established by a preponderance of the evidence that Gandara was culpably involved in the overarching series of events. Appellant's eligibility for relief should not turn on the precise character of Gandara's conviction.

*Lopez*, *supra*, 4 Cal.App.5th 649, is instructive. There, two defendants who were initially sentenced to LWOP as juveniles filed habeas petitions that resulted in their sentences being reduced to life with the possibility of parole. (*Lopez*, *supra*, 4 Cal.App.5th at p. 652.) They subsequently filed petitions for recall and resentencing under section 1170(d). (*Ibid.*) The People opposed the petitions, arguing as to one that "'the ship has sailed on resentencing'" because the LWOP sentence had already been reduced, and arguing as to the other that section 1170(d) was inapplicable to non-LWOP sentences. (*Ibid.*) The trial court granted the petitions and resentenced the defendants, and the People appealed. (*Ibid.*) *Lopez* affirmed. Noting that section

1170(d) "refers to the past," the court observed that both defendants "were sentenced to LWOP terms." (*Id.* at p. 654.) The court further reasoned that "modification of the LWOP sentences because of the *Graham* opinion should not render them ineligible for resentencing. . . . '[I]t would be fundamentally unfair to deny [respondents] the benefit of the change in California law because [they] had already been benefited by the decision made by the U.S. Supreme Court in the *Graham* decision.'" (*Ibid.*)

Here, appellant and Gandara were both, in the past, convicted of homicide offenses. Gandara subsequently benefitted from a favorable change in state law: her conviction was vacated and reduced to a lesser offense. It strikes us as fundamentally unfair to deny appellant the opportunity to seek relief under a statute aimed at encouraging and rewarding rehabilitation of juvenile offenders because his adult codefendant independently benefited from a separate legislative act of lenity. The record before the trial court established that Gandara, an adult who was charged with the same crimes as appellant, was convicted of at least one homicide or attempted homicide offense based upon her conduct with appellant. The lenity from which she later benefited does not preclude appellant from seeking relief under section 1170(d). The trial court erred in denying appellant's petition on this basis.

We need not and do not consider the remainder of appellant's claims.

## DISPOSITION

The trial court's order denying appellant's recall and resentencing petition under section 1170(d) is reversed. Appellant's sentence is recalled pursuant to section 1170(d)(5),

14

and this case is remanded for the trial court to hold a resentencing hearing in accordance with the relevant provisions of section 1170(d).  We express no opinion on how the court should exercise its discretion in resentencing.

**CERTIFIED FOR PUBLICATION**

COLLINS, ACTING P. J.

We concur:

TAMZARIAN, J.

VAN ROOYEN, J.*

---

\*      Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15