Filed 8/29/25

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MAKSIM YURYEVICH ISAYEV,<br><br>    Defendant and Respondent. | C101402<br><br>(Super. Ct. No. 05F09184) |

APPEAL from a judgment of the Superior Court of Sacramento County, Bunmi O. Awoniyi, Judge.  Reversed with directions.

Thien Ho, District Attorney, and David R. Boyd, Deputy District Attorney, for Plaintiff and Appellant.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Respondent.

---

[*]    Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I and II.

1

In 2007, Maksim Yuryevich Isayev was convicted and sentenced to life without the possibility of parole (LWOP) for a first degree, special-circumstance murder that he committed when he was 17 years old. In 2013, after defendant successfully petitioned for a writ of habeas corpus, the trial court vacated the original sentence and resentenced him to an aggregate term of 50 years to life.

In 2023, defendant filed a petition for resentencing under Penal Code[1] section 1170, subdivision (d), which permits juvenile offenders sentenced to LWOP to petition for recall and resentencing after 15 years of incarceration. Defendant argued, on equal protection grounds, that section 1170, subdivision (d), applied to him because his sentence of 50 years to life was the "functional equivalent" of LWOP.

The Sacramento County District Attorney (the District Attorney) initially requested and was granted a two-month extension to respond to the petition. The District Attorney subsequently filed a second extension request. However, on the day before the first extension was to expire, the trial court denied the second extension request and issued an order granting the petition.

On appeal, the District Attorney argues the trial court violated the prosecution's right to due process by issuing an order granting the petition before the deadline to file a response had expired. The District Attorney also argues the order fails on its merits for several reasons, including that (1) equal protection principles do not require section 1170, subdivision (d), relief be extended to juvenile offenders sentenced to the functional equivalent of an LWOP term; and (2) defendant's sentence is not the functional equivalent of an LWOP term because he is eligible for a youth offender parole hearing during his 25th year of incarceration under section 3051.

We reject the District Attorney's due process argument, but exercise our discretion to excuse the forfeiture because this case presents an important legal question: whether

---

[1]    Unspecified statutory references are to the Penal Code.

the availability of a youth offender parole hearing under section 3051 renders a juvenile offender ineligible for recall and resentencing under section 1170, subdivision (d). We conclude that it does. Because defendant is statutorily eligible for a youth offender parole hearing at the age of 42, we find his sentence is not the functional equivalent of an LWOP term. Accordingly, we reverse the order granting defendant's section 1170, subdivision (d), petition.

## BACKGROUND FACTS AND PROCEDURE

As the facts underlying defendant's conviction are not relevant to the issues raised on appeal, we recite them only briefly and focus on the relevant procedural history.

Defendant was the former boyfriend of codefendant Mariya Stepanov. (*People v. Maksim Yuryevech Isayev et al.* (July 19, 2011, C055417) [nonpub. opn.] (*Isayev*) [2011 Cal. App. Unpub. LEXIS 5334, at pp. *1-4].)[2] The victim slept with Stepanov and bragged about it. (*Ibid*.) Stepanov was upset and told defendant what had happened. Defendant told Stepanov to call the victim and arrange to meet him in a park late at night. (*Ibid*.) Stepanov did so. (*Ibid*.) When defendant arrived, he saw the victim and Stepanov standing close together. (*Ibid*.) Defendant approached the victim and asked Stepanov if "this was 'the guy.' " (*Ibid*.) When Stepanov nodded "yes," defendant shot the victim twice, killing him. (*Ibid*.) Defendant was just shy of his 18th birthday at the time of the murder.

In March 2007, a jury found defendant guilty of first degree murder (§ 187, subd. (a)) with an enhancement for the personal and intentional discharge of a firearm that proximately caused death (§ 12022.53, subd. (d)). The jury also found true a lying-in-wait special circumstance allegation (§ 190.2, subd. (a)(15)).

---

[2] Defendant's middle name is incorrectly spelled as Yuryevech; the correct spelling is Yuryevich.

On April 6, 2007, the trial court sentenced defendant to LWOP, plus 25 years to life for the firearm enhancement. (*Isayev, supra*, C055417 [2011 Cal. App. Unpub. LEXIS 5334, at pp. *1-2].) Defendant appealed. (*Ibid*. [2011 Cal. App. Unpub. LEXIS 5334, at p. *70].) On direct appeal, we struck a parole revocation fine but otherwise affirmed the judgment. (*Ibid*.)

In 2013, defendant filed a petition for writ of habeas corpus with the California Supreme Court challenging his LWOP sentence as cruel and unusual punishment under the Eighth Amendment to the United States Constitution and *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*). The Supreme Court issued an order to show cause, returnable in the superior court, why defendant should not be entitled to a resentencing hearing. The trial court ultimately granted the petition, vacated defendant's sentence, and ordered the matter to be set for a resentencing hearing.

On July 1, 2016, the trial court resentenced defendant to an aggregate term of 50 years to life (25 years to life for the murder count, consecutive to 25 years to life for the firearm enhancement).

On December 29, 2023, after serving more than 15 years of his sentence, defendant filed a petition for recall and resentencing under section 1170, subdivision (d). By its plain language, section 1170, subdivision (d), applies only to juvenile offenders sentenced to a term of LWOP. However, *People v. Heard* (2022) 83 Cal.App.5th 608 at page 612 (*Heard*), held that equal protection principles require courts to extend the benefits of section 1170, subdivision (d), to juveniles sentenced to the functional equivalent of LWOP. Relying on *Heard,* defendant argued that section 1170, subdivision (d), applied to him because his sentence of 50 years to life was the "functional equivalent" of an LWOP term. Defendant additionally argued that, upon recall of his sentence, he would become entitled to the ameliorative benefits of Proposition 57 (Public Safety and Rehabilitation Act of 2016 (Proposition 57); as approved by voters, Gen. Elec.

4

(Nov. 8, 2016)), such that his case should be transferred to juvenile court for a transfer hearing under Welfare and Institutions Code section 707.

On February 23, 2024, the prosecution requested a 60-day extension, to April 26, 2024, to file a response to defendant's petition. In support of the request, the deputy district attorney handling the matter declared: "The People require more time to await direction from the Court to determine if a response is required. If said response is required, the People need additional time to gather the relevant materials such as CDCR [Department of Corrections and Rehabilitation (CDCR)] records, review said materials and finalize the response." The trial court granted the requested extension to April 26, 2024.

On March 25, 2024, the deputy district attorney sent an email to the trial court clerk and generally asked if the trial court would let the prosecution know whether and when a response to a *Heard* petition would be required. The deputy district attorney and the trial court clerk then had the following email exchange:

[TRIAL COURT CLERK]: "The Court cannot advise you whether to file a response or not, that is up to your office. If the Court orders you to act, you will be notified in writing . . . ."

[DEPUTY DISTRICT ATTORNEY]: "Perhaps I miscommunicated. On these petitions, both Judge Bowman and Judge Awoniyi have previously denied several petitions without seeking input from the People (because of sentence length and/or age of petitioner at the time of the crime). I am simply seeking that information. If the Court denies a petition on its face, the People need not file an opposition. If the Court finds the sentence warrants a legitimate look at relief, the People then respond. [¶] So all I'm seeking is whether the Court has/will deny a petition on its face."

[TRIAL COURT CLERK]: "Thank you for the clarification. These petitions are still under review. Once we get a ruling from [the] Judge we will update the system and send out notice to all parties."

[DEPUTY DISTRICT ATTORNEY]: "Thank you . . . . Do you mind if I continue to check in via email on these kinds of cases? If the Court has issued, or is about to issue, a ruling denying, I don't want to burden you all with unnecessary [extension of time] requests. So before I generate paperwork, I try to seek information. If you would prefer I just file [extensions of time] until receiving service of an order denying, I can certainly do that. Whatever makes your lives easier!"

[TRIAL COURT CLERK]: "We prefer you just file [extensions of time] until receiving service of an order denying. Thank you for asking."

[DEPUTY DISTRICT ATTORNEY]: "No problem. Given the delays with legal research, at what point should I construe silence from the Court as a decision not to deny on the face of the petition?"

[TRIAL COURT CLERK]: "You shouldn't. Silence from the Court is not a decision to not deny on the face of the petition. However, if it has been more than 90 days since the filing of the petition you may inquire about the status."

On April 17, 2024, the prosecution sent the trial court clerk an email regarding defendant's petition: "Since it is more than 90 days from the filing, I wanted to find out if the Court was going to deny the motion on its face. If not, the People intend to file a response." The trial court clerk responded: "[O]ur legal research team has not made a recommendation yet. Please submit your response or a request for extension."

On April 22, 2024, the prosecution filed a second request to extend the time to respond to the petition, to July 26, 2024. In support of the second extension request, the deputy district attorney offered the same showing of good cause as the first extension request: "The People require more time to await direction from the Court to determine if a response is required. If said response is required, the People need additional time to gather the relevant materials such as CDCR records, review said materials and finalize the response."

6

On April 25, 2024, the day before the prosecution's response was due, the trial court denied the second extension request, writing "[t]he Court is prepared to rule on defendant's petition, and will do so via a separate order."

That same day, the trial court issued an order granting defendant's section 1170, subdivision (d), petition. Citing *Heard, supra*, 83 Cal.App.5th 608, and *People v. Contreras et al*. (2018) 4 Cal.5th 349 (*Contreras*), the court held that defendant was eligible for relief because his sentence of 50 years to life is the functional equivalent of an LWOP sentence. Having found that defendant meets the criteria listed in section 1170, subdivision (d), the court recalled his sentence and ordered his case transferred to the juvenile court. This appeal followed.

DISCUSSION

I

*The Prosecution's Right to Due Process*

The District Attorney argues that the trial court violated his right to procedural due process by granting defendant's petition before the deadline for filing its reply expired. We agree that the court erred by issuing its ruling a day early, but we are not persuaded that the error constituted a denial of due process.

We begin our analysis by acknowledging that the California Constitution expressly provides that "[i]n a criminal case, the people of the State of California have the right to due process of law . . . ." (Cal. Const., art. I, § 29.) Although due process is a " 'flexible concept,' " (*People v. Pillsbury* (2021) 69 Cal.App.5th 776, 789), the core of due process is the right to notice and a meaningful opportunity to be heard. (*Id*. at p. 795; *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1297.)

In this case, the District Attorney's right to notice and an opportunity to be heard was defined by section 1170, subdivision (d)(4), which provides: "A reply to the petition, if any, shall be filed with the court within 60 days of the date on which the prosecuting agency was served with the petition unless a continuance is granted for good cause."

7

(§ 1170, subd. (d)(4).) The District Attorney argues that the trial court deprived the People of the right to file a reply because, after granting an extension of time through April 26, 2024, the trial court granted the petition on April 25—the day before the extended deadline—"without having heard from the People." This is factually correct, as far as it goes. The District Attorney was entitled to use the entire period to file a reply, and the trial court erred by issuing an order the day before the People's reply was due.

Nevertheless, we find no due process violation because the District Attorney has failed to explain how the trial court's error denied it notice and opportunity to be heard. As defendant argues, the District Attorney had four months (from the filing of the petition on December 29, 2023, through April 25, 2024) to file a reply but failed to do so. Nor is there any evidence that the District Attorney attempted to file, or had plans to file, a reply by the April 26, 2024, deadline. Instead, the District Attorney sought information from the trial court clerk in a series of emails and relied on an expectation that the trial court would grant its April 22, 2024, request for an additional extension of time. The District Attorney argues this reliance was "reasonable" based on the court's "historical practice" of granting extensions (in whole or in part) and warning the parties when extensions would be denied or more heavily scrutinized. We are not persuaded. Whether or not it was common for the court to grant extension requests, the District Attorney could not reasonably assume the court would grant an extension merely because one was requested. Faced with a looming filing deadline, the District Attorney either needed to ensure the extension was granted or be prepared to file a reply. The District Attorney did neither. Thus, no due process violation occurred when the court ruled on the petition one day before the extended deadline. (*Krontz v. City of San Diego* (2006) 136 Cal.App.4th 1126, 1141; *Flores-Rodriguez v. Garland* (9th Cir. 2021) 8 F.4th 1108, 1113.)

II

*Forfeiture*

Because the District Attorney did not file a response to defendant's petition in the trial court, we requested supplemental briefing from the parties addressing whether the District Attorney's substantive challenges to the trial court's order should be deemed forfeited on appeal.

"As a general rule, a party who does not raise an argument below forfeits the argument on appeal." (*In re Abram L.* (2013) 219 Cal.App.4th 452, 462.) The forfeiture rule applies to claims based on statutory violations as well as constitutional rights. (*In re Seaton* (2004) 34 Cal.4th 193, 198; *People v. McCullough* (2013) 56 Cal.4th 589, 593.) However, application of the forfeiture rule is not automatic. (*Abram L.,* at p. 462.) An appellate court has discretion to excuse forfeiture where a case involves an important question of law. (*People v. Williams* (1998) 17 Cal.4th 148, 161; *People v. Espiritu* (2011) 199 Cal.App.4th 718, 725.)

After reviewing the supplemental briefs, we are persuaded that this appeal raises important legal questions concerning the interpretation and constitutionality of section 1170, subdivision (d), and that the principles of forfeiture would not be served by applying it in this case. Accordingly, we exercise our discretion to excuse any forfeiture. (*American Indian Health & Services Corp. v. Kent* (2018) 24 Cal.App.5th 772, 789; *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 6; *People v. Brown* (1996) 42 Cal.App.4th 461, 471.)

III

*Order Granting Section 1170, subdivision (d) Petition*

The District Attorney argues that the order granting the section 1170, subdivision (d), petition should be reversed for two reasons.

First, defendant is not eligible for relief under section 1170, subdivision (d), because the statute only applies to individuals sentenced to LWOP and defendant is not

9

serving LWOP or its functional equivalent. Although a 50-years-to-life sentence, standing alone, might be functionally equivalent to LWOP (see *Contreras, supra*, 4 Cal.5th at pp. 356, 369), the District Attorney argues that defendant's sentence is distinguishable because, under section 3051 (the Youth Offender Parole Program), he will be eligible for parole at the age of 42, during his 25th year of incarceration.[3] Thus, the trial court erred in applying *Heard, supra*, 83 Cal.App.5th 608, because, as a matter of law, defendant's sentence is not the functional equivalent of LWOP.

Second, to the extent *Heard, supra*, 83 Cal.App.5th 608 is not distinguishable, the District Attorney contends it was wrongly decided. In the District Attorney's view, *Heard* committed three critical errors. It erred in concluding that parole eligibility under section 3051 does not render an offender ineligible for relief under section 1170, subdivision (d). It erred in concluding that there is no rational basis for treating juvenile offenders sentenced to explicit LWOP differently from juvenile offenders sentenced to the functional equivalent of LWOP under section 1170, subdivision (d). And it erred in failing to consider the proper remedy for an equal protection violation.

We conclude, contrary to *Heard*, that eligibility for resentencing relief under section 1170, subdivision (d), turns on the sentence in effect at the time of the petition, not whatever sentence originally was imposed. Thus, parole eligibility under section 3051 may render a juvenile offender ineligible for relief under section 1170, subdivision (d), because the offender is no longer serving LWOP or its functional equivalent. We explain below.

---

[3] The prosecution also argues that (1) even without section 3051 defendant would be eligible for parole at the age of 50 under section 3055 (the Elderly Parole Program), and (2) even if both sections 3051 and 3055 did not apply, defendant could substantially advance his initial parole date by earning good-conduct credits under applicable CDCR regulations. (Cal. Code Regs., tit. 15, § 3043 et seq.)

To provide context for our discussion, we start with an overview of the changes in juvenile sentencing jurisprudence that led to the enactment of section 1170, subdivision (d), and section 3051.

A. *Supreme Court Jurisprudence*

"Over the last two decades, both the United States Supreme Court and the California Supreme Court have recognized that the Eighth Amendment's prohibition of cruel and unusual punishment limits 'the punishment that may constitutionally be imposed on juvenile offenders.' " *People v. Superior Court (Valdez)* (2025) 108 Cal.App.5th 791, 797 (*Valdez*).) Beginning with *Roper v. Simmons* (2005) 543 U.S. 551 (*Roper*) in 2005, the United States Supreme Court held that the Eighth Amendment categorically prohibits the imposition of the death penalty on juvenile offenders. (*Roper,* at pp. 568-571, 578.) In reaching this conclusion, the court identified three primary differences between juveniles and adults to explain why juvenile offenders are constitutionally different from adults for purposes of criminal sentencing. (*Id*. at p. 569.) First, the "comparative immaturity and irresponsibility of juveniles," which often results in " 'impetuous and ill-considered actions and decisions.' " (*Ibid*.) Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." (*Ibid*.) Third, "the character of a juvenile is not as well formed as that of an adult." (*Id*. at p. 570.) Taken together, these differences mean that juveniles have diminished culpability and greater prospects for reform and therefore are less deserving of the most severe punishments. (*Id*. at pp. 569-571.)

Five years after *Roper*, the United States Supreme Court held in *Graham v. Florida* (2010) 560 U.S. 48, 68-75, 82 (*Graham*), that the Eighth Amendment prohibits LWOP sentences for juveniles who commit nonhomicide offenses. The court reasoned that LWOP is " 'the second most severe penalty permitted by law' " (*Graham,* at p. 69) and an "especially harsh punishment" for a juvenile who will, on average, "serve more years and a greater percentage of his life in prison than an adult offender." (*Id*. at p. 70.)

11

While the Eighth Amendment does not foreclose the possibility that a juvenile convicted of nonhomicide crimes will remain behind bars for life, it does prohibit states from "making the judgment at the outset that those offenders never will be fit to reenter society." (*Graham,* at p. 75.)  Consequently, to comply with the Eighth Amendment, nonhomicide juvenile offenders facing a lifelong prison term must be given "some realistic opportunity to obtain release" before the end of that term.  (*Graham,* at pp. 75, 82.)

Two years later, in *Miller, supra,* 567 U.S. 460, the United States Supreme Court applied *Graham*'s reasoning to homicide cases, holding that the Eighth Amendment prohibits *mandatory* LWOP sentences for juveniles in homicide cases.  (*Miller,* at pp. 469-480, 489.)  Although rejecting a categorical bar on LWOP sentences for juveniles convicted of homicide offenses, the court equated LWOP to the death penalty and reaffirmed the principle that individualized sentencing is required when meting out the state's harshest penalties.  (*Id*. at pp. 474-475; *People v. Williams* (2024) 17 Cal.5th 99, 114.)  Accordingly, before imposing an LWOP sentence on a juvenile homicide offender, the sentencer must have the opportunity to consider individualized mitigating circumstances, such as the juvenile's age and age-related characteristics, to ensure the penalty is reserved only for the most culpable defendants committing the most serious offenses.  (*Miller,* at pp. 475-477, 479, 489; *Williams,* at p. 114; see *In re Kirchner* (2017) 2 Cal.5th 1040, 1054 (*Kirchner*) [summarizing the factors a sentencing court should consider before sentencing a juvenile homicide offender to LWOP]; see also *Montgomery v. Louisiana* (2016) 577 U.S. 190, 208-209 [clarifying that *Miller* applies retroactively to juvenile offenders whose convictions and sentences were final when *Miller* was decided].)

Not long after *Miller*, the California Supreme Court held in *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*) that *Graham*'s ban on LWOP sentences for juvenile nonhomicide offenders extends to a term-of-years sentence that is "the functional

12

equivalent" of an LWOP sentence. (*Id*. at pp. 267-268; *People v. Hardin* (2024) 15 Cal.5th 834, 844 (*Hardin*).) In *Caballero*, the trial court had sentenced the defendant, convicted of three counts of attempted murder, to an aggregate prison term of 110 years to life. (*Caballero,* at p. 265.) Citing *Graham, supra*, 560 U.S. 48, the California Supreme Court held that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." (*Caballero,* at p. 268.) Without dictating a "precise timeframe" for holding parole hearings for juvenile offenders sentenced to LWOP or its equivalent, the California Supreme Court explained that a state must provide the juvenile offender with some realistic opportunity to obtain release from prison and reenter the community during the juvenile's expected lifetime. (*Id*. at pp. 268-269; *id*. at pp. 272-273 [conc. opn. of Werdegar, J.]; *Hardin,* at p. 844.) The court held that the defendant's 110-year sentence was the "functional equivalent" of LWOP and therefore violated *Graham*'s prohibition against LWOP sentences for juvenile offenders convicted of nonhomicide crimes. (*Caballero,* at pp. 265, 268.)

In 2016, in *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), the California Supreme Court considered whether the rationale of *Miller* extends to cases in which a juvenile offender is automatically sentenced to the functional equivalent of LWOP. (*Id*. at p. 276.) The defendant in *Franklin* committed a murder at the age of 16, was tried as an adult, and given a mandated sentence of 50 years to life. (*Id*. at p. 268.) The defendant challenged his sentence as violating *Miller*'s prohibition against mandatory LWOP sentences for juvenile offenders. (*Id*. at pp. 268, 272-273, 276.) The California Supreme Court determined that "just as *Graham* applies to sentences that are the 'functional equivalent of a life without parole sentence' [citation], so too does *Miller* apply to such functionally equivalent sentences." (*Id*. at p. 276.) Nonetheless, our high court found it need not decide whether the defendant's 50-years-to-life sentence violated *Miller* because

13

the intervening enactment of section 3051 rendered his claim moot. (*Franklin,* at pp. 268, 276-280, 286.) We expand on this point below.

Two years later, in *Contreras, supra*, 4 Cal.5th 349, our high court held that sentences of 50 years to life and 58 years to life imposed on two juvenile nonhomicide offenders were unconstitutional under *Graham*. (*Id*. at p. 356.) Although the sentences afforded the defendants an opportunity for parole within their expected natural lifetimes, (*id*. at pp. 360-361), the court held that the sentences nevertheless violated the Eighth Amendment because they denied the defendants a " ' "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." ' " (*Contreras,* at pp. 367, 372, 379.) The court rejected the Attorney General's proffered "life expectancy" test as the arbiter of determining whether a sentence is the functional equivalent of LWOP for purposes of *Graham*. (*Id*. at pp. 356, 360-361.) Instead, it held the relevant inquiry is whether the sentence offers the juvenile offender a realistic hope of release and a genuine opportunity to reintegrate as a productive and respected member of the citizenry. (*Id*. at pp. 367-368, 373.) The court concluded that the defendants' sentences, which provided no possibility of release until the ages of 66 and 74, were unconstitutional because they did not allow sufficient time for the defendants to reintegrate as productive and respected members of the community. (*Id*. at p. 368.)

B. *Section 1170, subdivision (d)*

Effective January 1, 2013, Senate Bill No. 9 (2011-2012 Reg. Sess.) (Senate Bill No. 9) amended section 1170 by adding former subdivision (d)(2), (now § 1170, subd. (d)(1)). (*Kirchner, supra*, 2 Cal.5th at p. 1049; Stats. 2021, ch. 731, § 1.3.) Senate Bill No. 9, introduced in the Legislature after *Graham*, was inspired by concerns about LWOP sentences for juvenile offenders. (*Kirchner,* at p. 1049; see Assem. Com. on Public Safety, Analysis of Sen. Bill No. 9 (2011–2012 Reg. Sess.) as amended May 27, 2011, pp. 10-14.) The bill created a procedural mechanism for juvenile offenders "serving

terms of life without parole to seek recall of their sentences and resentencing to a term that includes an opportunity for parole." (*Kirchner,* at p. 1049.)

Since its enactment, section 1170, subdivision (d), has undergone minor revisions. (*Heard, supra*, 83 Cal.App.5th at p. 619.) The provision that describes who is eligible to file a petition is virtually unchanged. (*Ibid*.) It currently provides: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(1)(A); see also *id*., subd. (d)(1)(B) [describing exceptions].)

In the petition, the defendant must describe his or her remorse, identify any work towards rehabilitation, and state that one of four qualifying circumstances is true. (*Valdez, supra*, 108 Cal.App.5th at p. 799; § 1170, subd. (d)(2).) If the court finds by a preponderance of the evidence that one or more qualifying circumstances are true, then the court "shall recall the sentence and . . . hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170, subds. (d)(5), (d)(7)-(d)(9).) "If the sentence is not recalled or the defendant is resentenced to imprisonment for life without the possibility of parole, the defendant may submit another petition for recall and resentencing" after 20 years of incarceration, and another after 24 years. (§ 1170, subd. (d)(10); *Valdez,* at p. 799.)

In *Kirchner, supra*, 2 Cal.5th at page 1054, the California Supreme Court considered whether section 1170, subdivision (d), provides a constitutionally adequate remedy for *Miller* error such that a defendant must exhaust that procedure before seeking habeas corpus relief. (*Kirchner*, at p. 1043; see *Miller, supra*, 567 U.S. 460.) Our high court held that section 1170, subdivision (d), does not provide an adequate remedy for *Miller* error. (*Kirchner,* at pp. 1052-1056.) The court reasoned that "[i]n crucial

15

respects, section 1170[, subdivision] (d)(2) is different from statutes that automatically provide a timely parole hearing to juvenile offenders sentenced to terms that otherwise might raise Eighth Amendment concerns. By simply transforming the affected sentences to life with parole terms, those laws avoid the *Miller* issues associated with the earlier sentences. [Citations.] . . . . Section 1170[, subdivision] (d)(2), by contrast—having been designed as a method to revisit lawfully imposed sentences of life without parole— provides only a selective and qualified remedy, the application of which is ultimately premised on an inquiry that may, but does not necessarily, overlap with the one demanded under *Miller*." (*Id.* at pp. 1054-1055.)

C.      *Section 3051*

The same year that Senate Bill No. 9 became law, the Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.; eff. Jan. 1, 2014) (Senate Bill No. 260), adding section 3051 and amending sections 3041, 3046, and 4801. (*People v. Munoz* (2025) 110 Cal.App.5th 499, 506, rev. gr. June 25, 2025, S290828 (*Munoz*); *In re Trejo* (2017) 10 Cal.App.5th 972, 980; Stats. 2013, ch. 312, §§ 1-5.)

The Legislature passed Senate Bill No. 260 explicitly to conform juvenile sentencing with *Graham*, *Miller*, and *Caballero*. (*Hardin, supra*, 15 Cal.5th at p. 845.) In language echoing the holdings of these cases, section 1 of the enactment declares: "The Legislature recognizes that youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, [adolescents who have engaged in illegal activity] can become contributing members of society. The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity . . . ." (Stats. 2013, ch. 312, § 1; *Hardin,* at p. 845.)

"At the heart of Senate Bill No. 260 was the addition of section 3051, which requires the [Board of Parole Hearings] to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration," depending on the term of the offender's "controlling offense." (*Franklin, supra*, 63 Cal.4th at p. 277; § 3051, subd. (b).) That amendment was aimed at remedying unconstitutional juvenile sentences without the need for an expensive and time-consuming resentencing hearing by providing juvenile offenders with a meaningful opportunity to obtain release on parole. (*People v. Sands* (2021) 70 Cal.App.5th 193, 198; § 3051, subds. (a), (d), (e).) For eligible offenders, the provisions of section 3051 are designed to "ensure they will have a meaningful opportunity for release no more than 25 years into their incarceration." (*Franklin*, at p. 277.) Senate Bill No. 260 also added section 4801, subdivision (c), which requires the Board of Parole Hearings, in reviewing a prisoner's suitability for parole, to give "great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

In *Franklin, supra*, 63 Cal.4th 261, our Supreme Court considered the effect of Senate Bill No. 260 on a juvenile offender's claim of *Miller* error. (*Franklin,* at p. 268; see *Miller, supra*, 567 U.S. 460.) As discussed, the defendant in *Franklin* was a juvenile offender given a mandated sentence of 50 years to life. (*Franklin,* at p. 268.) The defendant challenged the constitutionality of his sentence, arguing that it was the "functional equivalent" of LWOP and therefore violated *Miller*'s prohibition against mandatory LWOP sentences for juvenile offenders. (*Id*. at pp. 268, 276.) While his appeal was pending, Senate Bill No. 260 was enacted, entitling defendant to a youth offender parole hearing during his 25th year of incarceration. (*Franklin,* at p. 277.) The California Supreme Court held that Senate Bill No. 260 mooted the defendant's claim of *Miller* error. (*Franklin,* at pp. 268, 276-280, 286; *id*. at pp. 280-282 [distinguishing § 3051 from § 1170, former subd. (d)(2)].)

17

The court explained that the new law "superseded" the defendant's sentence so that, notwithstanding his original term of 50 years to life, the defendant was eligible for a parole hearing during his 25th year of incarceration. (*Franklin, supra*, 63 Cal.4th at pp. 277, 279-280.) It "effected this change by operation of law, with no additional resentencing . . . required." (*Id*. at p.279.) Thus, Franklin's sentence was not functionally equivalent to LWOP, and his *Miller* claim was moot.[4] (*Id*. at pp. 279-280, 286; accord, *In re Cook* (2019) 7 Cal.5th 439, 448-449.)

As originally enacted, section 3051 made youth offender parole hearings available only for offenders incarcerated for crimes committed before the age of 18, and it excluded those sentenced to LWOP. (*Hardin, supra*, 15 Cal.5th at p. 845.) Since that time, the Legislature has expanded the reach of the statute by increasing the age threshold for offenders to the age of 25. (*Id*. at p. 846.) In addition, after *Kirchner, supra*, 2 Cal.5th 1040, held that section 1170, subdivision (d), was inadequate to cure *Miller* error, the Legislature expanded section 3051 to include juvenile offenders sentenced to LWOP, making them eligible for parole hearings during their 25th year of incarceration. (*Hardin,* at p. 845; *People v. Morales* (2021) 67 Cal.App.5th 326, 346.)

As a result of these amendments, most persons convicted of an offense committed before the age of 26 are now eligible for a youth offender parole hearing after 15, 20, or 25 years in prison, depending on their controlling offense. (*People v. Sands, supra*, 70 Cal.App.5th at p. 198.) However, section 3051 continues to exclude certain categories of offenders from the youth offender parole hearing process. For example, the statute

---

[4]    Although the California Supreme Court expressed no view on whether the enactment of section 3051 would moot an Eighth Amendment challenge to a lengthy *non-mandatory* sentence, (*Franklin, supra*, 63 Cal.4th at p. 280) California appellate courts have concluded that section 3051 renders such sentences constitutional by guaranteeing the defendant a meaningful opportunity to obtain release within his or her expected lifetime. (*People v. Scott* (2016) 3 Cal.App.5th 1265, 1281-1283; see *People v. Cornejo* (2016) 3 Cal.App.5th 36, 67-68.)

categorically excludes offenders sentenced under the "One Strike" (§ 667.61) or "Three Strikes" law (§§ 667, 1170.12) and offenders sentenced to LWOP for a controlling offense committed after the person attained 18 years of age. (§ 3051, subd. (h).)

D.    *Proposition 57*

At the time of defendant's offense, Welfare and Institutions Code section 707 authorized prosecutors to charge defendant directly in adult criminal court. (Former Welf. & Inst. Code, § 707, subd. (d)(2)(A).) In November 2016, the voters passed Proposition 57, which eliminated direct filing and required prosecutors to commence all cases involving a minor in juvenile court. (*O.G. v. Superior Court* (2021) 11 Cal.5th 82, 87.) After Proposition 57, certain categories of minors can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 305; § 707, subd. (a)(3).)

The California Supreme Court has determined that Proposition 57 is an ameliorative change in the law that applies retroactively to any cases not yet final. (*People v. Superior Court (Lara), supra*, 4 Cal.5th at pp. 303-304.) In so holding, the court concluded that the appropriate remedy for a juvenile charged directly in criminal court whose case was not final is a conditional reversal and remand for a juvenile transfer hearing. (*Id*. at pp. 309–310, 313.) If the juvenile court determines it would not have transferred the defendant to criminal court, the juvenile court shall treat the defendant's convictions as juvenile adjudications and impose an appropriate disposition. (*Id*. at p. 310; *People v. Garcia* (2018) 30 Cal.App.5th 316, 320.)

In *People v. Padilla* (2022) 13 Cal.5th 152, the California Supreme Court answered affirmatively the question of whether resentencing reopens an otherwise final judgment for purposes of retroactive relief under Proposition 57. In *Padilla*, the defendant originally was sentenced before Proposition 57 was enacted, but his sentence

19

was vacated on habeas corpus, and the case was remanded for imposition of a new sentence. (*Padilla,* at p. 158.) Finding no meaningful distinction between sentences rendered "nonfinal" because the defendant is undergoing retrial or resentencing and those " 'not yet final on initial review,' " the court held that Proposition 57 would apply to his resentencing. (*Padilla,* at pp. 158, 161-163.) Intermediate appellate courts—including this one—likewise have concluded that recall and resentencing opens a defendant's case to retroactive application of Proposition 57 and other ameliorative laws. (*People v. Lopez* (2020) 56 Cal.App.5th 835, 845, rev. gr. Jan. 27, 2021, S265936, rev. dism. July 20, 2022 [recall and resentencing under § 1170, subd. (d)]; *People v. Montes* (2021) 70 Cal.App.5th 35, 47 [§ 1170, subd. (d)]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 996-100 [former § 1170.95, now § 1172.6]; *People v. Keel* (2022) 84 Cal.App.5th 546, 564 [§ 1172.6]; *People v. Trent* (2025) 112 Cal.App.5th 251, 262-263 [§ 1172.6].)

E.       People v. Heard

By its terms, section 1170, subdivision (d)(1), limits resentencing relief to juvenile offenders sentenced to an explicit LWOP term. In *Heard, supra*, 83 Cal.App.5th 608, the Fourth Appellate District, Division One, held that equal protection principles require that the benefits of section 1170, subdivision (d), also be extended to juveniles sentenced to the functional equivalent of LWOP. (*Heard,* at p. 612.)

The defendant in *Heard* was sentenced to a term of 23 years plus 80 years to life for two counts of attempted murder he committed at the age of 15, and one count of voluntary manslaughter he committed at the age of 16. (*Heard, supra*, 83 Cal.App.5th at p. 612.) After 15 years of incarceration, the defendant petitioned the court to recall and resentence him under section 1170, former subdivision (d)(2) (now section 1170, subd. (d)(1)). (*Ibid*.) The trial court denied the petition because the defendant was not sentenced to an LWOP term. (*Ibid*.) The defendant appealed, arguing that (1) section 1170, subdivision (d)(1), should be interpreted to apply both to juveniles sentenced to LWOP and juveniles sentenced to the functional equivalent of LWOP, and (2) if section

20

1170, subdivision (d)(1), is not so interpreted, then it violates his constitutional right to equal protection of the laws. (*Heard,* at p. 622.)

On appeal, the court rejected the defendant's statutory interpretation argument, holding that the plain language of the statute limits relief to juvenile LWOP offenders. (*Heard, supra*, 83 Cal.App.5th at pp. 623, 626.) However, the court agreed that denying relief to juveniles sentenced to functionally equivalent (de facto) LWOP sentences would violate the constitutional right to equal protection. (*Id*. at p. 626.)

Because *Heard* was decided before our Supreme Court clarified the standard for equal protection challenges in *Hardin, supra*, 15 Cal.5th 834,[5] the court analyzed the defendant's equal protection claim using a traditional two-step inquiry. (*Heard, supra*, 83 Cal.App.5th at pp. 627–633.) At the first step, the court considered whether the class of persons allegedly subjected to unequal treatment was similarly situated with the class of persons who benefited from the challenged law. (*Id*. at p. 627.) Heard argued that because his sentence (103 years to life) was the functional equivalent of LWOP, he was similarly situated to juveniles sentenced to LWOP. (*Id*. at p. 628.) In contrast, citing *Franklin, supra*, 63 Cal.4th 261, the People argued that enactment of section 3051 effectively "reform[ed]" Heard's sentence so that it was no longer the functional equivalent of LWOP. (*Franklin,* at p. 281.)

The appellate court disagreed with the People, concluding that Heard's eligibility for a parole hearing under section 3051 did not undermine the conclusion that his sentence was the functional equivalent of LWOP. (*Heard, supra*, 83 Cal.App.5th at

---

[5] In *Hardin, supra*, 15 Cal.5th at page 850, our Supreme Court held that the similarly situated test serves no purpose in cases "in which the only real question is whether a facial difference in treatment is adequately justified by the purposes the law was meant to serve." In such cases, the "only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Id.* at pp. 850-851.)

pp. 628-629.)  Relying on *People v. Lopez* (2016) 4 Cal.App.5th at pages 649, 654,[6]

*Heard* explained that section 1170, subdivision (d), does not require that the defendant

currently be serving an LWOP sentence, only that the defendant " 'was sentenced' " to an

LWOP term.  (*Heard,* at p. 629, italics omitted.)  It continued, "[a]t the time Heard was

sentenced, section 3051 had not yet been enacted," and therefore he was required to serve

103 years before becoming parole eligible.  (*Ibid*.)  "Such a sentence constitutes a de

facto life without parole sentence."  (*Ibid*.)

The court acknowledged that under *Franklin, supra*, 63 Cal.4th 261, retroactive

application of section 3051 means Heard's sentence "as it currently operates is no longer

the functional equivalent of life without parole," but the court held that "this does not

change the fact that the sentence *was* a de facto [LWOP] sentence at the time it was

imposed."  (*Heard, supra*, 83 Cal.App.5th at p. 629.)  Thus, because Heard " 'was

sentenced' " to the functional equivalent of LWOP, the court concluded he was similarly

situated to juvenile offenders whose sentences make them eligible for resentencing under

section 1170, subdivision (d).  (*Heard,* at p. 629, italics omitted.)

Turning to the second step of the equal protection analysis, the court considered

whether the disparate treatment of the two categories of juvenile offenders was

constitutionally justified.  (*Heard, supra*, 83 Cal.App.5th at p. 631.)  Applying the

rational basis test, the court was unable to identify a rational basis for making juvenile

offenders sentenced to an explicit LWOP term eligible for resentencing under section

1170, subdivision (d), while denying the same opportunity to juvenile offenders

sentenced to terms that amount to the functional equivalent of LWOP.  (*Heard,* at

---

[6]    In *People v. Lopez, supra*, 4 Cal.App.5th at page 651, the Second Appellate
District, Division Six, held that defendants were eligible for resentencing relief under
section 1170, former subdivision (d)(2), (now § 1170, subd.(d)(1)) even though their
LWOP sentences already had been reduced to simple life sentences to meet the
requirements of *Graham, supra*, 560 U.S. 48.

pp. 631-632.) Accordingly, the court held that denying de facto LWOP offenders the opportunity to petition for resentencing under section 1170, subdivision (d), violates equal protection. (*Heard,* at p. 634.)

In *People v. Sorto* (2024) 104 Cal.App.5th 435 (*Sorto*), the Second Appellate District, Division Three, followed *Heard* in concluding that a juvenile offender sentenced to more than 100 years in prison was eligible for relief under section 1170, subdivision (d). (*Sorto,* at pp. 439-440, 453-454.) The defendant in *Sorto* raised the same equal protection argument as the defendant in *Heard*, but the trial court denied the petition because Sorto was eligible for parole pursuant to section 3051. (*Sorto,* at p. 441.) The appellate court reversed. (*Id*. at p. 440.) It concluded that *Heard* correctly rejected the argument that section 1170, subdivision (d), requires the defendant to currently be serving an LWOP sentence or its functional equivalent. (*Sorto,* at p. 447.) Instead, the "plain language" of section 1170, subdivision (d), requires only that the defendant " ' "was sentenced' " " to an LWOP term. (*Sorto,* at pp. 447-448.) As additional support for this conclusion, *Sorto* noted that (1) the Legislature amended section 1170, subdivision (d), several times after *People v. Lopez, supra*, 4 Cal.App.5th 649, was decided without clarifying that an offender must currently be serving an LWOP term, and (2) the Legislature did not repeal section 1170, subdivision (d), when it extended section 3051 to include juvenile LWOP offenders. (*Sorto*, at p. 448.)

*Sorto* additionally rejected the Attorney General's argument that section 1170, subdivision (d), cannot provide meaningful relief to functionally equivalent LWOP offenders because section 3051 already provides all the relief section 1170, subdivision (d), was intended to confer. (*Sorto, supra*, 104 Cal.App.5th at pp. 448-449.) The court held that "[c]ontrary to the Attorney General's suggestions, section 1170[, subdivision] (d) plainly has the potential to grant meaningful relief to functionally equivalent LWOP offenders" beyond eligibility for parole, such as conferring "the benefits of retroactive ameliorative changes to the law." (*Sorto,* at p. 449.) "For example, if the court were to

recall Sorto's sentence, his case might be sent to juvenile court under Proposition 57." (*Ibid.*)  And he "may be entitled to relief under Senate Bill No. 1391 (2017–2018 Reg. Sess.), which prohibits the transfer to criminal court of certain juveniles accused of committing crimes when they were 14 or 15 years old." (*Ibid.*)

In *People v. Bagsby* (2024) 106 Cal.App.5th 1040 (*Bagsby*), a different panel of the Fourth Appellate District, but the same division that decided *Heard*, declined an invitation by the Attorney General to reconsider *Heard*.  (*Id.* at p. 1046.)  The defendant in *Bagsby* was convicted and sentenced to a total term of 107 years to life for crimes he committed when he was 15 years old.  (*Ibid.*)  In 2023, after serving more than 15 years, he filed a petition for recall and resentencing under section 1170, subdivision (d).  (*Ibid.*) The trial court held that *Heard* was controlling, granted the petition, and recalled his sentence.  Upon recall, the trial court concluded that the defendant also was entitled to the retroactive benefits of Proposition 57 and Senate Bill No. 1391 (2017–2018 Reg. Sess.), which meant the defendant had to be released because he fell outside the jurisdiction of the juvenile court.  (*Ibid.*)

On appeal, the People raised three challenges to the trial court's order.  (*Bagsby, supra*, 106 Cal.App.5th at p. 1054.)  First, the People argued that the court should reconsider whether equal protection requires courts to extend the benefits of section 1170, subdivision (d), to juveniles sentenced to de facto LWOP terms.  (*Bagsby*, at p. 1054.) Next, if unwilling to reconsider whether there was an equal protection violation, the People argued the court should reconsider its choice of remedies.  Specifically, the People argued that the court should strike down the resentencing provision, rather than expand it to de facto LWOP offenders.  (*Ibid.*)  Finally, even if the petition were granted, the People argued that the defendant should not have been entitled to the retroactive benefits of ameliorative laws such as Proposition 57. (*Bagsby*, at p. 1054.)  *Bagsby* rejected each of these arguments.  (*Id.* at pp. 1046, 1054-1069.)

24

Thus, until recently, every appellate court to address this issue had concluded that (1) juvenile offenders sentenced to de facto LWOP terms are entitled to section 1170, subdivision (d), relief under the constitutional guarantee of equal protection, and (2) the availability of a youth offender parole hearing under section 3051 does not render a juvenile offender ineligible for relief under section 1170, subdivision (d). (*Heard, supra*, 83 Cal.App.5th at pp. 626, 628-629; *Sorto, supra*, 104 Cal.App.5th at pp. 440, 454; *Bagsby, supra*, 106 Cal.App.5th at pp. 1055-1059; accord, *People v. Cabrera* (2025) 111 Cal.App.5th 650, 653 [following *Heard*])

Three recent decisions call into question whether excluding juvenile offenders sentenced to 50 years to life from resentencing under section 1170, subdivision (d), would violate equal protection. They are *Valdez, supra*, 108 Cal.App.5th 791, *Munoz, supra*, 110 Cal.App.5th 499, and *People v. Ortega* (2025) 111 Cal.App.5th 1252, 1265 (*Ortega*).

In *Valdez, supra*, 108 Cal.App.5th 791, the Fourth Appellate District, Division Two, distinguished *Heard* and held that it does *not* apply to a petition for resentencing under section 1170, subdivision (d)(10), if the defendant was eligible for a youth offender parole hearing under section 3051 at the time of resentencing. (*Valdez,* at pp. 794-795.)

The defendant in *Valdez* was originally sentenced to LWOP for a murder he committed at the age of 17. (*Valdez, supra*, 108 Cal.App.5th at p. 794.) In 2018, the defendant petitioned for resentencing under section 1170, subdivision (d)(1), and the court granted the petition and resentenced defendant to 50 years to life. (*Valdez,* at p. 794.) In 2024, the defendant filed another section 1170, subdivision (d)(1), petition, arguing that he was entitled to relief under *Heard, supra*, 83 Cal.App.5th 608, because his sentence of 50 years to life was the functional equivalent of LWOP. (*Valdez,* at p. 794.) The trial court construed the filing as a petition under section 1170, subdivision (d)(10), which allows a juvenile offender who previously petitioned under section 1170, subdivision (d)(1), to file a second petition, after 20 years of imprisonment, if the

25

sentence was not recalled or the defendant was resentenced to LWOP. (*Valdez,* at p. 794; § 1170, subd. (d)(10).) The trial court granted the petition. (*Valdez,* at p. 795.)

The appellate court reversed. (*Valdez, supra*, 108 Cal.App.5th at p. 795.) The court held that, unlike *Heard*, which focused on the sentence originally imposed, the relevant sentence for Valdez was "the one that was imposed upon resentencing." (*Id*. at p. 801.) Since Valdez was resentenced *after* the enactment of section 3051, the court concluded that his sentence included the availability of a youth offender parole hearing during his 25th year of incarceration pursuant to section 3051. (*Valdez,* at pp. 801-802.) Accordingly, under *Franklin, supra*, 63 Cal.4th 261, Valdez's sentence is not functionally equivalent to LWOP, and the trial court erred by granting his petition for resentencing under section 1170, subdivision (d)(10). (*Valdez,* at pp. 801-802.)

A few months later, in *Munoz, supra*, 110 Cal.App.5th 499, the Second Appellate District, Division Seven, similarly held that a juvenile offender was ineligible to petition for recall and resentencing under section 1170, subdivision (d), because his 50-years-to-life sentence was not the functional equivalent of LWOP. (*Munoz,* at pp. 502-503.) The defendant in *Munoz* was found guilty of first degree murder and shooting at an occupied motor vehicle, with firearm and gang allegations. (*Id*. at p. 503.) The trial court originally sentenced the defendant to a term of 10 years, plus 50 years to life. (*Ibid*.) However, after a reversal on direct appeal, defendant was resentenced to a term of 50 years to life. (*Ibid*.) After serving 15 years of his sentence, Munoz petitioned for resentencing under section 1170, subdivision (d), arguing that his sentence was the functional equivalent of LWOP. (*Munoz,* at p. 503.) The trial court denied the petition, finding that Munoz was not sentenced to the functional equivalent of LWOP because he would be eligible for parole under section 3051 in 2029, when he would be 39 years old. (*Munoz,* at p. 503.)

The *Munoz* court affirmed, but on a different ground. (*Munoz, supra*, 110 Cal.App.5th at pp. 507-512.) In a split decision, the majority concluded that,

notwithstanding section 3051, the defendant's sentence of 50 years to life is not the functional equivalent of LWOP because Munoz will only be 65 years old when he becomes eligible for parole and "will have a realistic opportunity to obtain release from prison during his expected lifetime." (*Munoz,* at pp. 507-508, 512.) The majority held that *Contreras, supra*, 4 Cal.5th 349, does not dictate a contrary result because the defendants in *Contreras* did not commit murder and the Supreme Court considered only whether their sentences violated the Eighth Amendment, not whether a sentence of 50 years to life is functionally equivalent to LWOP for purposes of section 1170, subdivision (d). (*Munoz,* at pp. 510-511; accord, *People v. Thompson* (2025) 112 Cal.App.5th 1058, 1072, fn. 4, 1074-1075.)

The dissent in *Munoz* would have found that *Contreras* was controlling and that excluding juvenile offenders sentenced to 50 years to life from resentencing under section 1170, subdivision (d), violated equal protection. (*Munoz, supra*, 110 Cal.App.5th at pp. 512-523 [dis. opn. of Feuer, J.].)

Finally, in *Ortega*, *supra*, 111 Cal.App.5th 1252, the Fourth Appellate District, Division Three, disagreed with *Heard* that section 3051 is irrelevant to resentencing under section 1170, subdivision (d). (*Ortega*, at pp. 1262-1265.) The petitioner in *Ortega* was a juvenile offender sentenced to life in prison with the possibility of parole after 42 years, which would have made him eligible for parole at age 59. (*Id*. at p. 1262.) However, due to the Legislature's enactment of section 3051, the defendant became eligible for a youth offender parole hearing after 25 years of incarceration, when the defendant would be about 42 years old. (*Id*. at pp. 1262, 1264-1265.) Relying on *Heard*, the defendant argued that any future section 3051 hearing was immaterial because he *was sentenced* to the functional equivalent of an LWOP sentence and, therefore, similarly situated with juvenile offenders whose sentences made them eligible for resentencing. (*Ortega*, at pp. 1261-1264.) The appellate court disagreed, concluding that *Heard* "cannot be reconciled with the Supreme Court's analysis in *Franklin*." (*Id*. at p. 1264.)

27

Under *Franklin*, the defendant's sentence necessarily was converted to a life sentence with a meaningful opportunity for release during his 25th year of incarceration, which is neither LWOP nor its functional equivalent. (*Id*. at pp. 1265-1266.) Thus, the trial court properly denied the defendant's resentencing petition. (*Id*. at p. 1266.)

F.    *Analysis*

With this background in mind, we turn first to the question of whether defendant's 50 years-to-life sentence is functionally equivalent to LWOP for purposes of section 1170, subdivision (d)—for, if not, it is unnecessary for us to decide whether excluding de facto LWOP offenders from section 1170, subdivision (d), violates equal protection. We conclude that defendant's sentence is *not* functionally equivalent to LWOP.

In granting the petition, the trial court relied on *Contreras, supra*, 4 Cal.5th 349, to conclude that defendant's sentence of 50 years to life is the functional equivalent of an LWOP sentence. However, both defendants in *Contreras* were convicted under the "One Strike" law (§ 667.61), which rendered them ineligible for youth offender parole under section 3051. (*Contreras,* at p. 359; § 3051, subd. (h).) In contrast, defendant is entitled to the benefit of section 3051 and, therefore, will receive a parole eligibility hearing at the age of 42, during his 25th year of incarceration.

As our Supreme Court has explained, section 3051 changes the way a youthful offender's sentence operates "by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole." (*Franklin, supra*, 63 Cal.4th at p. 278.) It effects this change by operation of law with no resentencing required. (*Id*. at pp. 278-279.) In so doing, section 3051 "effectively reforms" the defendant's sentence "so that the longest possible term of incarceration before parole eligibility is 25 years." (*Franklin,* at p. 281; *id*. at p. 278 [§ 3051 supersedes the defendant's sentence]; accord, *Ortega, supra*, 111 Cal.App.5th at p. 1265; *In re Cook, supra*, 7 Cal.5th at pp. 448-449; *People v. Williams, supra*, 17 Cal.5th at p. 115; see *County of San Diego v. Commission on State Mandates* (2023) 91 Cal.App.5th 625, 641.) Here, because defendant is eligible

28

for youth offender parole, his sentence includes a meaningful opportunity for release during his 25th year of incarceration. (§ 3051, subd. (b)(3).) Thus, by operation of law, his sentence is not the functional equivalent of an LWOP term. (*Ortega*, at pp. 1264-1265; *Franklin,* at pp. 279-281.)

In reaching this conclusion, we part ways with *Heard*, *Sorto*, and *Bagsby*, each of which concluded that the availability of a youth offender parole hearing under section 3051 does not render a juvenile offender ineligible for relief under section 1170, subdivision (d). Relying on *Lopez*, *supra*, 4 Cal.App.5th at page 654, those courts reasoned that because section 1170, subdivision (d)(1), uses the phrase " 'was sentenced,' " eligibility for relief depends only on the character of the original sentence imposed, not the sentence being served at the time of the petition. (*Heard, supra*, 83 Cal.App.5th at pp. 629, italics omitted; *Sorto, supra*, 104 Cal.App.5th at p. 447; *Bagsby, supra*, 106 Cal.App.5th at pp. 1057-1059.) Under this view, it is irrelevant whether an offender's sentence has been recalled, or whether section 3051 has reformed the sentence by capping the number of years that an offender may be imprisoned before becoming eligible for release on parole. It is enough that the defendant "was sentenced" to LWOP or its functional equivalent.

We disagree with this interpretation of section 1170, subdivision (d). As we have discussed, section 1170, subdivision (d), was "inspired by concerns regarding sentences of life without parole for juvenile offenders." (*Kirchner, supra*, 2 Cal.5th at p. 1049.) The Legislature enacted section 1170, subdivision (d), to provide (certain) juvenile offenders serving LWOP terms an avenue "to seek recall of their sentences and resentencing to a term that includes an opportunity for parole." (*Kirchner,* at p. 1049.) Given this purpose, it seems clear to us that the focus of section 1170, subdivision (d)(1), is the sentence being served *at the time the petition for recall and resentencing is filed*, not whatever sentence may have been imposed at the original sentencing hearing. To conclude otherwise is to assume that the Legislature created a procedure for recalling and

29

resentencing juvenile offenders sentenced to LWOP even if that sentence was modified or vacated on direct appeal or via postconviction collateral attack. (See *People v. Padilla, supra*, 13 Cal.5th at p. 163; *People v. Arias* (2020) 52 Cal.App.5th 213, 218-219; *People v. Martinez* (2017) 10 Cal.App.5th 686, 718.) This is inconsistent with legislative intent.

Even *Lopez, supra*, 4 Cal.App.5th 649, recognized that the recall and resentencing process "appears to contemplate that an LWOP term be in effect." (*Id*. at p. 654; see *Kirchner, supra*, 2 Cal.5th at pp. 1052-1053 [§ 1170, subdivision (d)(2), anticipates a lawful LWOP sentence that is "potentially subject to recall" under its terms].) We agree. Otherwise, it would beg the question why section 1170, subdivision (d)(6), specifies "[t]he factors that the court may consider when determining whether to resentence the defendant to a term of imprisonment with the possibility of parole." Likewise, if recall and resentencing were intended to be based on the original sentence, section 1170, subdivision (d)(10), providing for resentencing if the defendant was "*resentenced* to imprisonment for life without the possibility of parole," would be superfluous. (§ 1170, subd. (d)(10), italics added.)

*Lopez* reasoned that it would be " 'fundamentally unfair' " to deny juvenile offenders the benefits of section 1170, subdivision (d), merely because they already benefitted from a resentencing under *Graham, supra*, 560 U.S. 48. (*Lopez, supra*, 4 Cal.App.5th at p. 654.) However, given that section 1170, subdivision (d), is animated by concerns about LWOP sentences for juvenile offenders, (*Kirchner, supra*, 2 Cal.5th at p. 1049) we fail to see the unfairness in excluding juvenile offenders who are no longer serving an LWOP term (or its functional equivalent) because their original sentence was modified or vacated.

Although section 1170, subdivision (d)(1), uses the phrase " 'was sentenced,' " (*Lopez, supra*, 4 Cal.App.5th at p. 654) we do not ascribe much significance to the fact that the statute refers to the offender's sentence in the past tense. Relative to the time

when a petition for recall and resentencing is filed, a sentence will have always been entered in the past.

Nor are we persuaded that the Legislature's failure to change the "was sentenced" language, despite having amended the statute in other (unrelated) respects, reflects legislative approval of *Lopez* and *Heard*. Our Supreme Court has cautioned against drawing conclusions of statutory intent based on legislative silence or inaction. (*People v. Farley* (2009) 46 Cal.4th 1053, 1120.) " 'In the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry. "Legislative inaction is 'a weak reed upon which to lean.' " ' " (*People v. Escobar* (1992) 3 Cal.4th 740, 751.) Here, nothing has been brought to our attention to suggest the Legislature expressly or impliedly endorsed the analyses in *Lopez* and *Heard*. We decline to elevate the Legislature's silence into a species of implied legislation. (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300-301; *County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 404 [noting the Legislature's failure to act may indicate many things other than approval of a judicial construction of a statute].)

In our view, the clear intent of section 1170, subdivision (d)(1), is to create a procedure for recall and resentencing of juvenile offenders who *are serving* LWOP sentences. Thus, eligibility for relief depends on the sentence that is in effect at the time the petition is filed. In other words, the defendant is eligible for relief only if the defendant "was sentenced" and is still serving an LWOP term when the petition is filed.

We find additional support for this conclusion in *Kirchner* and the legislative history of the statute, both of which characterize section 1170, subdivision (d), as providing an avenue for juvenile offenders "serving" LWOP terms to seek recall and resentencing to a term that includes an opportunity for parole. (*Kirchner, supra*, 2 Cal.5th at p. 1049; Sen. Com. on Appropriations, Sen. Bill No. 9 (2011–2012 Reg. Sess.) as introduced May 26, 2011, pp. 2, 4; Assem. Com. On Appropriations, Analysis of Sen. Bill

No. 9 (2011–2012 Reg. Sess.) as amended Aug. 15, 2011, pp. 3-5; see *In re Jones* (2019) 42 Cal.App.5th 477, 484 [conc. opn. of Pollak, P. J.].)

We therefore agree with *Ortega*, *supra*, 111 Cal.App.5th at pages 1256-1257, 1259, 1261-1265, that the retroactive operation of section 3051 on a defendant's sentence is not irrelevant. If the defendant has become eligible for a youth offender parole hearing and, consequently, is no longer serving LWOP or its functional equivalent, the defendant is not eligible to petition for recall and resentencing under section 1170, subdivision (d). To the extent *Lopez*, *Heard*, *Sorto*, and *Bagsby* reached a contrary conclusion, we disagree with those decisions.

Here, after originally sentencing defendant to an LWOP term, the trial court granted defendant's habeas petition, vacated the original sentence, and resentenced him to a term of 50 years to life. Because section 3051 applies to this sentence, defendant is now entitled to a youth offender parole hearing at the age of 42, during his 25th year of incarceration. (*Franklin, supra*, 63 Cal.4th at p. 281; § 3051, subd. (b)(3).) A life sentence with parole eligibility at the age of 42 is not the functional equivalent of LWOP. (*Franklin,* at p. 279.) Consequently, even if equal protection principles require section 1170, subdivision (d), relief be extended to offenders sentenced to de facto LWOP terms, the trial court erred by granting defendant's section 1170, subdivision (d), petition because his sentence is not functionally equivalent to LWOP. (*Franklin,* at p. 279; *Valdez, supra*, 108 Cal.App.5th at pp. 801-802.)

In light of our conclusion, we find it unnecessary to address the other contentions on appeal.

DISPOSITION

The order granting defendant's section 1170, subdivision (d), petition and transferring his case to juvenile court is reversed.  On remand, the criminal court is directed to enter a new order denying the petition.

_____\s\_____,
Krause, J.

We concur:

\_\_\_\_\_\s\_____,
Hull, Acting P. J.

\_\_\_\_\_\s\_____,
Boulware Eurie, J.